## JONES and Another *against* TRIMBLE.

### IN ERROR.

Where the board of managers of a turnpike company authorised two of their number (the plaintiffs) to borrow twelve thousand dollars of a bank for the use of the company, pledging the stock for its repayment, and the defendant, and several other members of the board entered into a written agreement to guarantee each one twelfth part of that sum to the borrowers, if the stock should not be sufficient, and the money was borrowed accordingly and applied to the use of the company, who set apart one thousand dollars to meet discounts, and the plaintiffs after that sum was exhausted, continued to renew the note from time to time, paying the discounts and curtailments required by the bank, out of their own funds until the whole was ultimately paid off;

*Held,* that the contract was an entire one; that the defendant's liability continued as long as the loan continued; that the plaintiff's cause of action accrued when the whole of the money was paid, and that if suit was brought within six years from that time, the act of limitations was not a bar.

WRIT of error to the Court of Common Pleas of *Delaware* county.

*Nathan Jones* and *Gavin Hamilton,* the plaintiffs in error, were plaintiffs below, and brought this action of *assumpsit* against *William Trimble,* the defendant in error, upon a contract entered into under the following circumstances :

In the year 1817, the plaintiffs, the defendant, and others, were managers of the *Philadelphia, Brandywine* and *New London* Turnpike Company. The company being in want of funds to prosecute their work, the plaintiffs were appointed a committee to negotiate a loan of twelve thousand dollars with the Bank of the *United States.*

(Jones and another *v.* Trimble.)

The bank declined making the loan upon the security of the company, which was reported to the managers, when the following resolutions and agreement were entered into :

".At a meeting of the managers of the *Philadelphia, Brandywine* and *New London* Turnpike Company, held *April* 4, 1817, at the *Conestoga Wagon,* present, *Gavin Hamilton* president *pro tempore, John Worrall, Mahlon Parsons, Thomas Garrett, Aaron Palmer, William Trimble, Nathan Jones, Francis Wisely, Samuel Garrett,* treasurer and secretary,

" It was resolved, that *Nathan Jones* and *Gavin Hamilton* be authorised to borrow twelve thousand dollars of the Bank of the *United States,* for which the stock of the company is pledged, and we of the managers, whose names are hereunto subscribed, do agree to guarantee each one twelfth part of the above sum to the said *Nathan Jones* and *Gavin Hamilton,* if the above stock should not be sufficient.
(Signed)

> *Thomas Garrett,*
> *William Trimble,*
> *Mahlon Parsons,*
> *John Worrall,*
> *Aaron Palmer.*"

" Resolved, That if *Nathan Jones* and *Gavin Hamilton* shall be able to obtain the aforesaid sum of twelve thousand dollars from the *United States* Bank, they shall apply six thousand dollars thereof for the payment of three thousand dollars borrowed by *Thomas Garrett* and *Aaron Palmer,* and likewise three thousand dollars borrowed by *Nathan Jones* and *Aaron Palmer* from the Bank of *Delaware* county, pay five thousand dollars thereof into the hands of the treasurer, and the remaining one thousand dollars in the *United States* Bank, to meet discounts."

The original paper, containing the above resolutions and agreement, in the hand-writing of the defendant, was sent up with the record.

At a subsequent meeting of the board, a similar agreement was signed by two other managers.

In pursuance of this agreement, *Gavin Hamilton* drew his note for twelve thousand `dollars, in favour of *Nathan Jones,* dated *June* 10, 1817, at sixty days, which was endorsed by *Jones,* discounted by the Bank of the *United States,* and the money appropriated according to the resolution of the board.   This note was renewed from time to time, in the same shape, for the same sum, and for the same terms of credit, for about a year, when the bank required it to be cut down. *Jones* and *Hamilton* communicated to the board of managers the requirement of the bank, and requested them to furnish the means to meet it.

It was proved by *Samuel Garrett,* the treasurer and secretary of

(Jones and another *v.* Trimble.)

the company, who was examined as a witness in reference to this part of the case, that *William Trimble* was present at the meetings of the board of managers, after the money was borrowed by *Jones* and *Hamilton*, when the renewal of their notes was spoken of. *Jones* and *Hamilton* complained that they were obliged to cut down the notes, and wished the other members to pay something. The other members wished them to go on and renew the notes. The witness did not recollect that *William Trimble* actually expressed a wish that *Jones* and *Hamilton* should renew the notes, but he had a distinct recollection of the subject being mentioned in his presence, and he made no objection.

From the minutes of the company which were given in evidence, it appeared, that *Trimble* was present at meetings of the board of managers after the date of the agreement and resolutions of the 4th of *April*, 1817, above referred to, to wit, on the 6th of *June*, 1817, the 8th of *June*, 1818, the 3d of *November*, 1818, and the 6th of *September*, 1819.

The plaintiffs continued to renew the note at regular periods of sixty days, paying the discounts and stamps, and meeting the curtailments required by the bank until it was paid off on the 28th of *October*, 1823, when the amount paid by them, independently of the thousand dollars appropriated to meet discounts, was fourteen thousand six hundred and twenty-one dollars and sixty-six cents.

This action was commenced on the 9th of *January*, 1828, to recover one twelfth part of the last mentioned sum with interest.

There was evidence given on the trial to show, that the stock of the company was entirely worthless; that the company was in debt to the amount of thirty thousand dollars, and never held any property on which an execution could be levied, and never received anything from tolls. On the other hand it was proved, that the materials of which the road and bridges were constructed, were of considerable value. The declaration contained three counts of which the following is an abstract.

The *first* count stated, that in consideration that the plaintiffs at the special instance and request of the defendant, would borrow of the *United States* Bank twelve thousand dollars for the use of the turnpike company, of which the defendant was a manager, the defendant undertook and promised to pay them one twelfth part of the said sum, if the stock was not sufficient: That the plaintiffs borrowed the twelve thousand dollars accordingly, and applied it agreeably to the directions of the managers: That they were afterwards compelled to repay the same, with interest, discount and stamps, amounting to fourteen thousand six hundred and twenty-one dollars and sixty-six cents: That the stock of the said company was insufficient, and that the defendant had notice, whereby he became liable to pay, &c.

The *second* count set out the agreement and resolutions entered into by the board in terms; averred that the defendant and five others subscribed the same: That the plaintiffs borrowed the money

and applied it according to the last resolution: That they afterwards were compelled to repay it to the bank, amounting with discounts, &c. to fourteen thousand six hundred and twenty-one dollars and sixty-six cents: That the stock was not sufficient: That the defendant had notice, and consequently became liable to pay, &c.

The *third* count was *indebitatus assumpsit* for twelve thousand dollars money paid, laid out and expended by the plaintiffs to and for the use of the defendant, and at his special instance and request.

The pleas were *non assumpsit* and the act of limitations. On the trial the defendant's counsel requested the court to charge the jury, that the act of limitations was a flat bar to the plaintiffs' claim.

The court charged the jury accordingly, and at the request of the plaintiffs' counsel reduced their charge to writing and filed it of record.

CHARGE.—" The material question in this cause is, at what time the right of the plaintiffs to call on *William Trimble* to fulfil his guaranty commenced? Because, as the defendant has pleaded and relied on the statute of limitations, the plaintiffs' cause of action must have accrued or been recognised since the 9th of *January*, 1822, or it is barred and gone; the law prevents their recovery entirely, let their merits or the hardship of the case be what they may. The plaintiffs contend that their cause of action did not commence until the 28th of *October*, 1823, when the last five hundred dollars were paid. The defendant on the other hand contends, that it was complete when the first note fell due; that the guarantee was for one loan, and when that note was taken up their right of action was complete.

" The court are of opinion that the truth lies between them, and that the true construction of the whole of this contract of guarantee is, not that it was to apply to a single loan for sixty days, which would probably have been of little use to the company, but taking it in connexion with the resolution passed by the same managers, at the same time, appropriating one thousand dollars to meet discounts, it rather appears to be a contract to guaranty the payment of one loan, indeed, from the Bank of the *United States*, but to be continued by renewals, until the thousand dollars were exhausted in the payment of discounts, which would be about *August*, 1818. And if there were no parol evidence in the case, there would be little doubt, but that the moment that the fund failed, and the plaintiffs were compelled to pay, or commenced paying their own money to cut down the principal, or to pay discounts, their right of action commenced against somebody, for it cannot be well supposed that the guaranty was to extend to any indefinite time that it should be the pleasure of the bank or the plaintiffs to keep an account open by renewals of the fractions of the original debt. Whenever the means of continuing the original loan, and the time originally provided for had expired, the plaintiffs found themselves solely responsible to the bank, and obliged to look to their own resources; they paid the twelve thousand dollar note, by one thousand dollars in cash, and their note for eleven thou-

(Jones and another *v.* Trimble.)

sand dollars; and it appears to us that they then had a complete right of action. We have been considering the case without reference to the parol evidence of *Samuel Garrett,* which is, that *William Trimble* was twice present at meetings of the board after this; (*November* 13, 1818, and *September,* 16, 1819,) after the plaintiffs began to cut down and pay discounts out of their own pockets: That the plaintiffs were then pressing to have the notes taken up, or to be reimbursed what they had advanced to cut them down: The company were not able: They were requested by the members to go on and renew: He does not remember that *William Trimble* said any thing, but he was present and did not object. Can it be inferred from this that the contract was, varied, or the guarantee extended to any or an indefinite period of time? Or is it any thing more than an application to the plaintiffs, considering that they were already liable to the bank for what they had not then paid, and already had a cause of action against the guarantors? It cannot, we think, be contended or imagined to be more than if *William Trimble* had said, 'we are liable, you have your action against us, but it is not convenient for us to pay now; go on and renew your notes, cut them down and pay them, we are liable on our old agreement, but we make no new one.' We think the plaintiffs' cause of action was then complete, and no new guaranty is shown to be made by the defendant and whatever declaration is shown to be made, or silent consent given, at either of those two meetings, could be no more than a recognition of his liability on the original guaranty to save the statute of limitations, and can reach no further than the 16th of *September,* 1819.

" That being the case, and no recognition of the contract having been shewn within six years of the bringing of the action, (9th of *January,* 1828,) the defendant is entitled to your verdict."

The following specifications of error were filed in this court:

*First.* The court erred in giving it in charge to the jury that the plaintiff's claim was barred by the statute of limitations.

*Second.* The court should have left the testimony of *Samuel Garrett* to the jury, and suffered them to put their own construction on it.

*Third.* The court erred in the construction put by them on the testimony of *Samuel Garrett.*

The cause was argued in this court by *Dillingham* and *Chauncey,* for the plaintiffs in error, and *Tilghman* for the defendant in error; after which

The opinion of the Court was delivered by

HUSTON, J.—This case is not the only one within my recollection, in which one of the parties has endeavoured to put his cause on points not appearing in the contract, or in the evidence.

It is said the turnpike company never was indebted to the Bank of the *United States,* and *William Trimble* never was indebted to the

(Jones and another *v.* Trimble.)

bank.  It is said *Jones* and *Hamilton* borrowed for themselves, and loaned the money to the turnpike company, and could have sued them next day.  It is said the engagement of the turnpike company might be put out of the case, and then *Trimble* was liable to pay as soon as the company received the money : That the resolution of the managers, and the engagement of the defendant, and others, must be considered as separate and distinct agreements, not connected with each other.   In short, that we ought to disregard the agreement of the parties, the objects of the parties, and the engagements and covenants of the parties, and try the cause, as if it had been what it is not.

That *Jones* and *Hamilton* even after they received this money from the bank might have employed it in some other way, or required some other security from the turnpike company, is all true, but as they did give it to the company, and did not require any other security than the resolution of the managers, and the written guarantee of the defendant and others, each for one twelfth, we may throw away all supposed and supposeable cases, and decide on the facts and documents in the cause.  Whether, if *Jones* and *Hamilton* had become insolvent, and the company been rich and prosperous, the bank could have recovered this loan from the company, need not be decided, though I apprehend the Circuit Court of the *United States* on a bill in chancery, would not have thought it a difficult case.

Although *Jones* and *Hamilton* procured this money for the company, yet there were certain events which might have happened, after which they could not have sued the company with effect, *e. g.*, if the company could have sold for cash all its shares of stock, it could lawfully and properly have paid this twelve thousand dollars to the bank, as that stock was pledged to indemnify *Jones* and *Hamilton*.   When the bank called for certain portions of the money at stated periods, or in the phrase used here, resolved to cut down the note, if the company as they were requested by the plaintiffs to do, could have paid those portions as they were called for, it would have been a compliance with their agreement as stated in their resolution, and *Jones* and *Hamilton* so far from having a right to sue the next hour after they paid the money to the treasurer, would never have had any right of action against the company, or the defendant ; so too if the company had procured other drawers and indorsers to be substituted instead of *Jones* and *Hamilton*.   But it is argued that the plaintiffs had a right of action as soon as the sixty days expired, and they gave a new note. There are cases in which giving a negotiable note may discharge a debt, even a debt on bond and mortgage, or on judgment, but it is in cases where by the agreement of the parties, this effect is to be produced; where the understanding and agreement is otherwise, such is not the effect ; for instance, where an indorser wishes to be discharged, and the bank agree to accept another indorser, the latter becomes liable and the first indorser is discharged from his liability for that debt; but where the borrower from a bank, whose accomodation

is to last for some time, gives the bank, or gives his indorser, a mortgage to secure the payment of the money borrowed, that mortgage continues a security for the money borrowed, for the debt, and that is not discharged by giving a new note every sixty days.

The words of the resolution and guarantee, (for they form but one sentence,) are, "Resolved that *Nathan Jones* and *Gavin Hamilton* be authorised to borrow twelve thousand dollars of the Bank of the *United States,* for which the stock of the company is pledged, and we of the managers whose names are hereunto subscribed, do agree to guaranty each one twelfth part of the above sum to the said *Nathan Jones* and *Gavin Hamilton,* if the above stock should not be sufficient." This was signed by the defendant and four or five others, and then follows the resolution as to the application of the money, &c. &c.

Nothing is here found relating to the time, for which the loan should be obtained, nor any time limited after which the liability of guarantors should cease. The defendant and others guarantied the payment of the sum, not of any particular note, or evidence of debt, and it is now to be decided whether a plain undertaking can be avoided, by supposing the agreement, the parties and the contingency on which the defendant was to be liable, to be any thing else than what the evidence proves them to have been. Some cases decided in our own courts, but which were not brought to the consideration of the Common Pleas or of this court, must govern this case.

*Thursby* Assignee v. *Gray,* 4 *Yeates,* 518, decides that a surety is not discharged though the note is not sued when it becomes due. It was there contended that *Gray* was surety only till the day of payment in the note, &c.; the court decided that whoever is surety, or guaranties payment of a debt, continues liable after the day has passed when the debtor ought to have paid, unless in special cases and circumstances. The notion that a security in a bond or note to pay money at a fixed period, was not liable unless the money was demanded, and if not paid sued for at the end of the period, was again brought before this court in *Cope* v. *Smith,* 8 *Serg. & Rawle,* 110, the matter fully considered, and the doctrine there established, repeatedly recognised since, but not extended. On the principles there settled, the defendant, even if the loan had been for one year, and he had guarantied the payment, would have continued as much liable after the year had expired as he was at first, and could only be released by giving the plaintiffs express notice to wind up the business as soon as possible, for he would not continue liable any longer. I say he could only have been discharged by such notice, but I do not mean to be understood as laying it down that he could in this case have extricated himself from his engagement by such notice. See *Gibbs* v. *Cannon,* 9 *Serg. & Rawle,* 199. Although the money was borrowed not for the defendant but for a company, yet it was borrowed on an express promise by the defendant, that if the company did not supply funds to discharge the debt, he would be personally

(Jones and another *v.* Trimble.)

bound for one twelfth part of it. No time was mentioned within which the loan was to be repaid, and nothing said about its being repaid at one payment, or by instalments. To attempt to insert in the agreement that it was to be paid at sixty days, or three hundred and sixty-five days, and if not then paid or sued for, the defendant to be discharged, is both unjust and unreasonable, and the position, that if the plaintiffs were unable to raise the large sum of twelve thousand dollars at once, the defendant might be discharged, is still worse. The defendant, then, continued liable as long as the loan continued, and became liable to the plaintiffs as soon as they had paid the bank, and not before. *Pigou* v. *French*, 1 *Wash. C. C. Rep.* 278. Or at most when they were sued and judgment obtained against them. *Gardner* v. *Grove*, 10 *Serg. & Rawle*, 137. But was he liable to suit as often as they paid any part of it, or was it one entire contract, and the defendant's responsibility to be determined and settled in one suit, after the whole extent of liability was ascertained? I know of no case in which it has been decided that a surety as often as he pays a small part of a debt for his principal, can sue that principal, and I know of no case where it has been attempted. I do not say there may not be a contract in which a guarantor may sue as often as he is obliged to pay, but I do say this is not such a contract. It is very plain; the stock of the company was first pledged, and if that should not be sufficient, each of the subscribers agree to guaranty one twelfth of the sum borrowed.

*Overton* v. *Tracey*, 14 *Serg. & Rawle*, 311, was a stronger case than this. *Overton* in payment for land purchased by him, assigned a bond payable by six annual instalments, and a mortgage to secure the money due on the bond, and asserted that *Drew*, the obligor and mortgagor was a man of property and would pay the instalments as they fell due, and if he did not do so, *Overton* said that he would pay them; but he also said the property mortgaged was a sufficient security for the money, and if it did not produce the money he would make it good. *Tracey* wanted this guarantee put in writing, but *Overton* said, 'here are witnesses to my engagement, it is as good as if written.' The witnesses agreed in substance; contradicted each other in no respect, but each mentioned matters not stated by the other. On the testimony of the first, perhaps, *Tracey* could have sued *Overton* on each instalment; but on that of the second, perhaps, he could not sue until after the mortgage was resorted to; in other words, the liability arose on two contingencies—*Drew* failing to pay, and the mortgage not producing the money. *Drew* never was worth the amount of one instalment, and the land mortgaged was not worth the costs of suing the mortgage. It was contended, first, that *Overton*, on the evidence, was liable to an action for deceit, and six years having elapsed and suit not being brought, no other action could lie,—and that at all events he was liable as each instalment fell due, and could only be held to answer for those within six years before suit brought. The Court of Common Pleas decided against the defendant on both

(Jones and another *v.* Trimble.)

points, and their judgment was affirmed. Although the statute of limitations would, after six years, have barred the action for deceit, it did not bar the *assumpsit* on the guarantee, and this is often the case. A man takes my goods, and I may bring trespass; after four or five years he sells them and receives the price; I may bring *assumpsit* for money had and received, though my action of trespass would be barred. On the other point Judge Duncan put it on the testimony of the other witness who proved the guaranty of the sufficiency of the mortgage, and that if suit was brought within six years after that failed, the statute was no bar. That is enough for the plaintiffs in this case. The meaning of the agreement cannot be misunderstood; to entitle the plaintiffs at all, they must have been damnified by their engagement for this company, and the amount of their damage was to be compensated, first, out of the stock of the company, and if that failed the defendant was to pay one twelfth until the whole money was paid to the bank by the plaintiffs. It could not be known what the situation of the company would be. If the defendant could have proved at the trial, that the company, on the day when this suit was commenced, had stock which would sell for the amount of the plaintiffs' claim, the plaintiffs must have failed, precisely as in the case cited, the plaintiffs would have failed if proof had been made that the mortgage was available. I am then of opinion, that this contract was an entire one; that the cause of action arose when the whole money was paid, and the company then insolvent, (for its materials in roads and bridges could not be dug up, or pulled down and sold) and that if suit was brought within six years of that time, the statute of limitations was not a bar. As to this last point, see *Williams* v. *Moore,* 9 *Pick.* 434.

Some expressions, " that sureties are favoured," and the like, seem to have introduced a little confusion on that subject. Sureties are not bound beyond the plain intent and meaning of their engagement; but so far they are bound equally as the principal. Where security is required and given, it is because without it the money cannot be gotten. It would be unjust that the surety should not comply with his engagement. The person who gets and uses the money or property, may be bound to pay for it, and this may be evidenced by a note, a parol promise, or a bond; that note or bond may be void for want of legal form. The law will imply a promise from him who got and used the property, or equity will reform the instrument in some cases and make it binding on him who enjoyed the benefit; but this is not done to affect the surety unless the defect of the instrument was occasioned by him, or some fault can be attached to him; but if the instrument of writing is formal, plain and legal, and expresses clearly the obligations entered into by the parties, they are bound to comply with them according to their true import; and this extends as well to sureties as principals. See 3 *Yeates,* 344. 4 *Dall.* 79. *Roth* v. *Miller,* 15 *Serg. & Rawle,* 100. And as to the liability of guarantor, see *Gibbs* v. *Cannon,* 9 *Serg. & Rawle,* 199.

This view of the matter makes it unnecessary to remark on the parole testimony, and the judge's construction of it. It is not usual that a man is bound to pay by his silence, and can only happen where another in his presence and hearing speaks in his behalf and name, and alleges authority to do so, and is not contradicted. I would not put the same construction on the testimony which the judge did ; but in the view taken of the cause, no new agreement by the defendant was necessary; his first agreement in writing, in terms, and according to the obvious intent and meaning of all parties to it bound him, and continued to bind him for six years after the last payment was made by the plaintiffs, and in less than that time suit was brought.

Judgment reversed, and a *venire facias de novo* awarded.