### JAMES HALL & others *vs.* GIDEON F. THAYER.

Sundry persons subscribed for shares in a meeting-house, which was to be erected by a committee of their own number, at an expense not exceeding five thousand dollars, and the shares in which were to be one hundred: The subscribers were not to be called upon for any money, until the house should be completed: In the subscription paper, the subscribers engaged to "indemnify and save harmless," in proportion to the number of shares subscribed for by each, the committee, if they should give

Hall & others *v.* Thayer.

their notes for money borrowed for the purpose of building the house: Eighty three shares only were subscribed for; but the committee erected and finished the house, at an expense exceeding five thousand dollars, and borrowed money for said purpose, in 1829, gave their note for it, paid it in 1839, and commenced an action, in 1841, against one of the subscribers, on the engagement to indemnify them. *Held,* that the action was not barred by the statute of limitations, as the statute did not begin to run against the plaintiffs until they had paid the note. *Held also,* that the plaintiffs might well maintain an action at law against the defendant, and were not compelled to resort to a bill in equity; the subscribers for shares not being partners in the erection of the house, but merely share-holders, and their promise of indemnity being in its nature several, and not joint, and the proportionate share of each being distinctly defined. *Held also,* that the defendant was liable to the plaintiffs for his proportionate part of five thousand dollars, although one hundred shares were never subscribed for; but that he was not liable for any part of the additional sum expended on the house, unless he had estopped himself, by his own acts, from objecting to be liable for such additional expenditure.

Assumpsit on the money counts, and on an agreement, (hereinafter set forth,) dated October 1st 1828. The action was commenced in 1841.

At the trial in the court of common pleas, before *Colby,* J. September term 1845, the plaintiff gave in evidence the report of an auditor, who had been appointed, at a former term, to hear the parties, examine their vouchers and evidence, &c. This report stated that on the 1st of October 1828, the following paper was signed by the defendant, by each of the plaintiffs, and by sundry other persons :

"Whereas it is contemplated by us, the subscribers, to build a meeting-house near the rail-way in Milton, and whereas we have chosen James Hall, Edward Glover, Gridley Bryant and William Newcomb, all of Quincy, in the county of Norfolk, and William Felt of Milton, in said county, a committee to locate and build said house, which is not to exceed an expense of $5000, including the purchase of the land and all expenses to the completion of said house; and whereas it will be necessary to borrow the sum of $5000, to enable our said committee to execute the said undertaking; now in consideration that our said committee do give their note for said money, upon such terms as they can procure the same, we do promise and agree, that we will indemnify and save harmless the said committee, in the proportion to the number of shares for which we have respectively

subscribed, it being understood that the number of shares, at first agreed to be eighty, shall be increased to one hundred, and that our said committee be authorized to fill up said subscription to said number, by additional admission, at their discretion, either before or after the signing of this instrument. The said subscription paper, which is hereunto annexed,* suffering the alteration as to number of shares and amount above specified, shall still be directory to our committee abovesaid as to the building of said house. In witness whereof, we the subscribers have hereunto set our hands, the 1st of October 1828:" That the whole number of shares, that were ever subscribed for on the foregoing paper, was eighty three, of which the defendant subscribed for three; and that each of the plaintiffs subscribed for one share or more: That the plaintiffs (the committee named in the foregoing paper) constructed and completed a meeting-house in Milton, at an expense exceeding $5000, viz. $5941·62, exclusive of interest; and that if interest should be added, up to the time of the auditor's making his report, the expense would be $10,784·14: That by the sale of pews, and from assessments laid and collected, the plaintiffs had received the sum of $9708·03, casting interest, as above, on the principal received; leaving a balance of $976·11. And the auditor reported that the last mentioned sum was due to the plaintiffs.

---

* The paper annexed was in these terms: "At a meeting of a number of persons, inhabitants of Quincy and Milton, on the 16th of September 1828, it was determined and agreed to build a meeting-house in that part of Milton which adjoins the Plymouth road, and is near to the rail way, as land suitable therefor can be obtained; the cost of which meeting-house, exclusive of the land and underpinning, shall not exceed the sum of $4000, and to be divided into eighty shares, at $150 per share. The building committee will be authorized to borrow money to build the meeting-house. Subscribers will not be called upon to pay any money until the house shall be complete and finished; and the profit or loss arising on the sale of pews will be shared by the subscribers, according to the amount they subscribe. Wherefore we, whose names are hereunto set, do hereby promise and agree to take the number of shares set against our respective names, and to pay the amount therefor to such person or persons as shall be appointed to receive the same, whenever the said meeting-house shall be completed as above specified."

This paper was signed by the defendant and others, who subscribed for sixty four shares, in all; the defendant subscribing for three shares.

The defendant, at the trial, relied on the statute of limitations. The plaintiffs, to take their case out of the statute, showed that they borrowed $1000 of L. Cushing, as a part of the $5000 mentioned in the subscription paper aforesaid, and gave their promissory note therefor, dated June 2d 1829; that within six years of the commencement of this action, they requested the signers of said paper to join and assist in paying the note, which said signers refused to do ; and therefore the plaintiffs paid said note on the 17th of July 1839. There was no evidence of any other payment made by the plaintiffs within six years next before this action was commenced.

Upon the foregoing facts, the counsel for the defendant contended that the action could not be maintained ; because it was barred by the statute of limitations ; because the plain · tiffs, being themselves subscribers of the paper of October 1s' 1828, could not sue the defendant in an action at law, but that their remedy, if any, was by bill in equity ; because the said subscription paper was never perfected ; because the defendant was not liable beyond $5000 ; and because the declaration was insufficient, and not adapted to the evidence And the judge so ruled and instructed the jury. A verdict was rendered for the defendant, and the plaintiffs alleged exceptions to the said ruling and instructions.

*Wilkinson & Churchill,* for the plaintiffs. The defendant s engagement was to indemnify and save harmless the plaintiffs for borrowing money and giving their own notes for it. And the statute of limitations, in such a case, runs from the time when the party is damnified or pays the money, and not from the time when the party gives his notes. *Collinge* v. *Heywood,* 1 P. & Dav. 502, and 9 Adolph. & Ellis, 633. *Rodman* v. *Hedden,* 10 Wend. 498. *Jones* v. *Trimble,* 3 Rawle, 381. *Wood* v. *Leland,* 1 Met. 387. Angell on Lim. (2d ed.) 116.

It is not necessary that the plaintiff should resort to a bill in equity. He and the defendants were not copartners ; especially as to the undertaking to indemnify. *Ansell* v. *Waterhouse,* 2 Chit. R. 1, and 6 M. & S. 385. *Henderson* v. *McDuffee,*

5 N. Hamp. 38. There are no outstanding claims; but the demand in suit is the last. The case therefore falls within former decisions. *Fanning* v. *Chadwick*, 3 Pick. 420. *Haskell* v. *Adams*, 7 Pick. 59. *Brinley* v. *Kupfer*, 6 Pick. 179. *Radenhurst* v. *Bates*, 3 Bing. 463. *Helme* v. *Smith*, 7 Bing. 709.

The defendant is liable at least for the money borrowed of Cushing; for this was part of the $5000. He is also liable for his proportion of the whole sum expended in building the meeting-house; for he must be considered as having consented to and ratified the additional expenditure, or as having waived all objection thereto. See *Packard* v. *Lienow*, 12 Mass. 11.

*J. J. Clarke & Safford*, for the defendant. The subscription paper was *nudum pactum*, so that no implied contract would arise on the contract for indemnity; but the plaintiffs could recover only for work and labor afterwards done. See *Universalist Society in Newburyport* v. *Currier*, 3 Met. 417. *Amherst Academy* v. *Cowls*, 6 Pick. 439. *Trustees of Farmington Academy* v. *Allen*, 14 Mass. 172. *Phillips Limerick Academy* v. *Davis*, 11 Mass. 113. *Trustees of Bridgewater Academy* v. *Gilbert*, 2 Pick. 579. The damage to the plaintiffs, if any, occurred when the money, for which they gave their personal notes, was expended, and the means of payment were not forthcoming. The contract sued on is not strictly a contract of indemnity. The true meaning of it is, that the subscribers thereto should repay to the plaintiffs the $5000, which they might hire, provided that sum should not be paid by the sale of pews. On these views, this action is barred by the statute of limitations. *M'Dowell* v. *Goodwyn*, 2 Rep. Con. Ct. (S. C.) 441.

The parties were partners in a specific adventure; and the plaintiffs' remedy is in equity, and not at law. *Warren* v. *Stearns*, 19 Pick. 73. Chit. Con. (5th Amer ed.) 236, and cases there cited. Rev. Sts. c. 81, § 8.

The defendant is liable, if at all, only for his proportion of $5000. The plaintiffs had no authority to expend the money

received by them beyond that sum; and there is no evidence that the defendant has waived this objection, or assented to a larger expenditure.

As the subscription paper was never filled up, the defendant never became liable on it. 3 Met. 417. *Sothoron* v. *Weems*, 3 Gill & Johns. 435. *Salem Mill Dam Corporation* v. *Ropes*, 9 Pick. 187.

DEWEY, J. 1. The first question I propose to consider is, whether the claim of the plaintiffs is barred by the statute of limitations.

In the case of a mere promise of indemnity, the statute of limitations begins to run from the time the promisee actually pays the money, and not from the time he becomes liable for the payment of it. Angell on Lim. (2d ed.) 116. *Colvin* v. *Buckle*, 8 Mees. & Welsb. 680. *Jones* v. *Trimble*, 3 Rawle, 381. The latter case is very analogous to the case at bar. The contract in the present case was, to "indemnify *and save harmless;*" which latter stipulation might authorize a recovery, if the party was actually damnified, although no money had been paid; as if the party were taken in execution and committed to jail, and there confined till he should take the poor debtors' oath. In such case, he might recover, to the extent of the actual injury sustained; but that principle is not applicable to this case, upon the facts found here.

If this had been a promise to provide money for the payment of the notes that were given for borrowed money, such promise would have been broken by neglect to make the proper provision for their payment at maturity; and the party holding the indemnity might recover thereon, though the amount of damages, perhaps, would be nominal. But upon a bond of indemnity merely, the party would not be entitled to recover without proof of actual damage. *Chace* v. *Hinman*, 8 Wend. 452. *Matter of Negus*, 7 Wend. 499.

As a general rule, the right of a surety to maintain an action against the principal, or against a co-surety for contribution, does not arise until an actual payment of money. The plaintiffs, by the terms of the written contract, were authorized to

borrow $5000, to complete the building; and in consideration that the committee (the plaintiffs) would give their notes for the said money, as they could procure the same, the defendants promised and agreed to indemnify and save harmless the said committee, in proportion to the number of shares for which they had respectively subscribed. Upon this contract, no cause of action arose against the defendant, at least until an action was instituted and a judgment rendered thereon against the committee; and no substantial cause of action, that is, no right to recover the amount of such notes, would exist, until those notes were actually paid. Such payment of the notes having been made within the period of six years, the court are of opinion that the demand of the plaintiffs was not barred by the statute of limitations. The case of *Wood* v. *Leland*, 1 Met. 387, bears strongly upon this point. In that case, it was held, that the right of action in favor of a surety against a co-surety or his representatives, on a probate bond, arises when the surety pays the money, and not before.

2. We perceive no sufficient objection to this form of action. The plaintiffs and defendant were not copartners in the erection of the building, but merely share-holders in certain defined proportions. The defendant made a promise, which was several in its nature, and not joint, and the exact proportionate share assumed by him is distinctly defined in the contract. There can be no necessity of resorting to a bill in equity, with a view of making the other subscribers parties, as such proceeding would not affect the amount of the defendant's liability; nor has he any right of contribution. It was competent, we think, for the defendant to make such express contract with the individuals composing the committee, although they might also be share-holders; and such contract may be enforced at law.

3. The next objection taken is, that no liability ever attached to the defendant, inasmuch as the subscription paper was never filled up with the requisite number of shares. This fact might, under other circumstances, have been material, and the objection a fatal one to the maintenance of the action. If the

successful accomplishment of the undertaking in which these parties engaged had been dependent upon the actual filling up of the shares to the number of one hundred, or if the liability of the defendant would have been increased in amount by the omission to fill up the whole number proposed, it might have been strongly urged, that the subscription was never so perfected as to charge the defendant. But the peculiar provisions of this instrument and the articles of association avoid this objection. By recurring to them, it will be seen that the defendant could not be called upon for any payment until the great and leading object of the association was effected, viz. the building of the meeting-house. This, by the very terms of the agreement, must necessarily be accomplished before the liability of the defendant would attach. Nor was the extent of the defendant's liability to be enlarged or diminished in consequence of a smaller or larger number of shares being subscribed and taken by others. His liability, as to its extent, was exactly defined. It was to be in the proportion of the number of shares which he held to one hundred shares. Under these circumstances, we think it was not competent for the defendant to avail himself, by way of defence to this action, of the objection, that the full number of one hundred shares was not in fact subscribed. There was no express condition in the instrument to that effect, and the other provisions, already referred to, seem to furnish all the requisite security to the share-holders.

4. It is then further contended that the stipulations and engagements, entered into by the defendant, had reference to the erection of a meeting-house, which would require for its construction an expenditure not exceeding $5000. This, as it seems to us, was a provision entering into the original contract made by the defendant, and his liability was limited to the payment of his proportionate share of such deficiency as might exist in the expenditure, above the receipts, in the erection of a house, the cost of which did not exceed that sum. If, therefore, the committee have not substantially complied with this condition, and have materially and substantially

exceeded that amount, the defendant may well insist upon this fact as a good defence, if he is not, by his own acts and conduct, estopped from availing himself of such defence. If he, knowing such expenditures were to exceed the sum of $5000, actively coöperated in erecting the building, and encouraged such expenditures, or if, having full knowledge thereof, he subsequently assented to the same, and adopted and ratified the acts of the plaintiffs, he may be estopped from setting up this defence. If such defence is relied upon, it will present a question of fact to be settled by the jury.

Some question was suggested as to the sufficiency of the declaration. This we have not particularly considered ; and it is unnecessary to do so, as the plaintiff may have leave to amend his declaration, if a new trial is had.

*New trial granted.*