MISSISSIPPI, OUACHITA & RED RIVER R. R. Co. vs. CROSS.

By pleading the general issue to a suit by a corporation, the defendant admits that the plaintiff is a corporation.   (5 *Eng. R.* 423.)

The charter of a railroad company is the law of the contract between the corporation and a subscriber to its capital stock: and any material departure from the points designated in the charter for the location of the road, is a violation of the charter, and an invasion of the contract, and for such abuse of the charter, the franchise of the corporation may be seized upon *quo warranto,* unless the Legislature has waived the right of the State to seize the franchise, by acts legalizing the violation of the charter.

But in a suit by a railroad company, or other corporation, against a subscriber for assessments upon his stock, he is not permitted to show, by way of defence to the action, that the corporation has, by mis-user, or non-user, violated or failed to comply with the provisions of its charter.

If the directors undertake to make an unwarrantable departure from the provisions of the charter, in the location or construction of the road, or in the appropriation of the funds of the company, the stockholder has his remedy by injunction—not to enjoin the collection of calls due upon his stock, but to restrain the corporation from the particular violation or abuse of its charter.

**444**    CASES IN THE SUPREME COURT

M., O. & R. R. R. R. Co. vs. Cross.    [MAY

It is not competent for the defendant, in a suit by a railroad company against a stockholder, for assessments upon his stock, to prove declarations made by the agent of the company in public speeches in order to obtain subscriptions, that the road would pass through a particular county, unless the substance of such declarations had been incorporated in the contract of subscription, and a compliance therewith by the company, made a condition precedent to the payment of such assessment.

Where the verdict of the jury is wholly unwarranted by the evidence, a new trial will be granted by this Court.

*Writ of Error to Hempstead Circuit Court.*

Hon. HARRIS FLANAGIN, Special Judge.

WATKINS & GALLAGHER, for the appellants.

We think that the merits of this case are settled by the decision of this Court in the case of *Booker, Ex parte,* upon an application by one of the stockholders of the company to enjoin the company from collecting the calls made on account of his subscription. See 18 *Ark. Rep.* 338. We also cite 21 *Vermont* 30; 13 *Metcalf* 311; *Amer. Railroad Cases* 226, 422; *Chester Glass Co. vs. Dewey,* 16 *Mass. R.* 94.

As to the variation in the road not being the subject of a plea, see *London & Brighton R. R. Co. vs. Wilson,* 6 *Bing. (New) R.* 138; 8 *Dowl.* 40.

If the directors so varied from their charter as to have subjected themselves to a forfeiture, the only remedy would have been by *quo warranto.*

The evidence as to the representations of Dockery, as to the location of the road, and that the subscription was made under these representations, etc., was properly rejected.

If the representations of Dockery were, that the road would be located on a different line from that stated in the charter, the defendant cannot avail himself of them in his defence, because he is presumed to know the provisions of the charter under which the subscription was taken. He had no right to rely on them. *Pierce on R. R.* 72.

S. H. Hempstead, for the defendant.

The subscription of the defendant for ten shares of stock was a contract, mutually binding, and amounted to an engagement on the part of the company to establish and locate the road so that the same should terminate *at or near Fulton*. It was a contract, and must be construed in the same way as if the charter had been expressly incorporated in it. *Newry Railway Co. vs. Combe,* 6 *Eng. Rail. Cas.* 485, 637, 488, 641. The same rules must therefore be applied as to any other contracts.

A subscriber enters into an obligation with the corporation in the nature of a special contract, the terms of which contract are limited by the specific provisions, rights and liabilities detailed in the act of incorporation. *Union Locks and Canals vs. Towne,* 1 *New Hamp.* 46.

An act of incorporation or charter is just as much a part of the contract of subscription as though it had been embodied in the caption to the subscription paper. And as a corporation can exercise no powers except those conferred by the charter, it follows that to do what is not therein prescribed, is a breach of contract. *Winter vs. Muscogee Railroad Co.,* 11 *Geo.* 441.

The first violation of the contract was on the part of the plaintiff, in a most material respect—in a material variation of the route, and the establishment of an entirely different terminus on Red river, from that prescribed in the charter—and which, on familiar principles, entirely absolved the defendant from his engagement. *Middlesex Turnpike Corp. vs. Locke,* 8 *Mass.* 268; *Hartford vs. New Haven R. R. Co.,* 5 *Hill* 383; 13 *Ill.* 512; 11 *Geo.* 438; 10 *Mass.* 385; 1 *N. Hamp.* 46; 22 *Miss.* 297.

The substance of the rejected testimony is, that John Dockery, the president and general agent of the company, to obtain the subscription in question, stated and represented in public speeches and private conversation, and held it out as an inducement to subscribe, that the road contemplated by the charter would run through Hempstead county, to Fulton and would thus be a great benefit to the people of the county, and would

**446**     CASES IN THE SUPREME COURT

M., O. & R. R. R. R. Co. vs. Cross.     [May

be good stock; and the subscription in question was made under the *belief and on the understanding that the road would be fixed, established, located and run to the points indicated in the charter.*

His authority was unlimited, and hence, any declarations, representations or statements made by him, in order to obtain subscriptions, were binding upon the corporation for which he was acting, and they could not be disavowed. They were within the scope of the authority conferred.

The representations of Dockery were made at the very inception of the contract, related to its subject matter, and entered into and formed a part of it; and without which, indeed, the contract never would have been made at all. *Story on Agency* 127, 133, 307, *a.*

This evidence was admissible, and it is difficult to conceive on what ground its exclusion can be maintained. *Fairlie vs. Hastings,* 10 *Ves.* 126; *Garth vs. Howard,* 8 *Bing.* 451; *Hannay vs. Stewart,* 6 *Watts* 489; 26 *Penn.* 69, 71.

*This is not a case where an attempt was made to change a written subscription by parol evidence, for, in the absence of fraud it is conceded, that such evidence is not admissible.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

Assumpsit, by the MISSISSIPPI, OUACHITA AND RED RIVER RAIL-ROAD COMPANY against EDWARD CROSS, in the Hempstead Circuit Court, commenced 2d May, 1856.

The object of the suit was to recover the calls due upon ten shares (of $100 each) of the capital stock of the company subscribed by the defendant.

The defendant pleaded the general issue, with leave to introduce special matter in evidence. The cause was submitted to a jury at December term, 1856, on an agreement of facts, in substance, as follows:

John Dockery, and others, (the defendant not being one of the number,) on the 29th November, 1852, filed in the office of the Secretary of State, the charter of the MISSISSIPPI, OUACHITA AND

RED RIVER RAILROAD COMPANY, under the general corporation law of 8th of January, 1851, and became a corporation for the purpose of constructing a railroad from a point on the bank of the Mississippi river, at or near *Gaines' Landing*, in the State of Arkansas, *through or near Camden*, on the Ouachita river, thence to some point on Red river, *at or near Fulton*, to some point on the boundary line *between the State of Arkansas and the State of Texas*.

That the charter of the company was approved and declared to be a public law by an act of 22d January, 1855, which passed both houses of the General Assembly, was signed by the President of the Senate, and approved by the Governor, but was not signed by the Speaker of the House, etc.

That on the 10th of September, 1852, the defendant subscribed for, and became the proprietor of ten shares of stock of the company, for the purpose of constructing said railroad between the points specified in the character.

That the assessments and calls were made, as alleged in the declaration, and notice thereof given as directed by the act of incorporation, and that they have not been paid by the defendant.

The defendant was never an officer or director in the company; and, of his own accord, has abstained from participating in the proceedings thereof since the location of the road.

The road has been located and fixed by the company, without the assent of the defendant, as follows: Beginning on the Mississippi river at Ferguson's point, north of Gaines' Landing, thence to Camden, and thence, crossing at a point on Red river, called the *cut-off*, to the boundary line between Arkansas and Texas.

The agreement proceeds to set out the survey and report of the engineer, made in 1854, and adopted by the company, showing the relative distances, and costs of construction of the road from Ferguson's point, and from Camden to Fulton, Dooly's ferry, and the *cut-off*, on Red river, which report is fully set out

in the case of *Witter vs. The Mississippi, Ouachita and Red River Railroad Co.*

That the road has actually been fixed, located and established by the authority of the company, acting through their president and directors, or a majority of them, to cross at the *cut-off*, on Red river, and run thence to the Texas boundary line.

John Dockery was the general agent of the company, for the purpose of receiving subscription of stock, etc.

The defendant, for the purpose of showing that the plaintiff had not located the road agreeably to the terms of the charter, but had materially varied therefrom, proved that the *cut-off* was, on an air-line, 20 miles south from Fulton, on Red river, and 40 miles by the usually traveled wagon road.

The defendant also introduced evidence as to the comparative advantages of making Fulton, instead of the cut-off, the crossing point, etc.

He also proved that the route from Camden to the cut-off does not touch Hempstead county, and that if the road had been located on a straight line to Fulton, it would have passed through the southern portion of the county, etc. That Fulton is the terminus, on Red river, of the Cairo and Fulton Railroad, and has been a place of notoriety and business for twenty years.

That Ferguson's point, on the Mississippi, is four miles, on an air line, from Gaines' Landing.

That Dockery, in his public speeches, in Hempstead county, in order to obtain subscriptions, stated that the road would run through the county.

To all of which testimony the plaintiff objected, but in order to rebut the same, introduced Lloyd Tilghman, the chief engineer of the road, who made the experimental surveys, and scientific explorations necessary for the location thereof, who testified that the cut-off presented the best facilities for a crossing on Red river, anywhere within the region of Fulton; which latter point he found wholly unfit from physical obstacles, and had to condemn it.

Whereupon the plaintiff moved to exclude from the jury all the oral testimony aforesaid, pertaining to the location of the road, contrary to the terms of the charter, and also all testimony relative to the declarations made by Dockery in his public speeches; together with the rebutting testimony introduced by the plaintiff, as incompetent and irrelevant to the issue in the cause. Which motion the court sustained, and defendant excepted.

The jury returned a verdict in favor of the defendant. The plaintiff moved for a new trial on the grounds that the verdict was contrary to law and evidence. The Court overruled the motion; plaintiff excepted, set out the evidence and brought error.

1. By pleading the general issue, the defendant below admitted that the plaintiff was a corporation. *Ald. & Coun. vs. Finley*, 5 *Eng.* 423.

2. The plaintiff in error was sued by the corporation for the amount of calls due upon his stock. It is insisted that he had the right to prove, and did prove, by way of defence, that the company, in locating the road, violated the provisions of the charter, and the law of the contract with him, and consequently he was released from the contract of subscription, etc. That the charter under which he subscribed for stock, provided for the construction of a railroad from a point on the Mississippi river, at or near Gaines' Landing, by Camden, to some point on Red river, at or near Fulton, etc., and that the company in locating the road, had made a departure from these points not warranted by the provisions of the charter.

It is doubtless true, that the charter is the law of the contract between the corporation and a subscriber to its capital stock. That the corporation has no right to depart from the law, or violate the contract of the subscriber. It is equally true, that any material departure from the points designated in the charter for the location of the road, is a violation of the charter, and an invasion of the contract, and that for such abuse of the charter, the franchise of the corporation may be seized upon

450          CASES IN THE SUPREME COURT

M., O. & R. R. R. R. Co. vs. Cross.                    [MAY

*quo warranto,* unless the Legislature has waived the right of
the State to seize the franchise, by acts legalizing the violation
of the charter. *Pierce on Am. R. R. Law, p.* 78 *to* 100; 9 *Wend.*
351.

But what is the remedy for the subscriber where the corpora-
tion has made an unwarranted departure from the terms of the
charter in the location of the road? Is he permitted to show
such violation of the charter to defeat a suit brought against
him by the corporation for assessments upon stock subscribed
for by him?

The subject of the forfeiture of corporate franchises by non-
user or misuser (*says Mr. Kent,* 2 *Com.* 312,) was fully discussed
in the case of the *King vs. Amery,* 2 *Term R.* 515; and it was
held that though a corporation may be dissolved, and its fran-
chises lost, by non-user or neglect, yet it was assumed as an
undeniable proposition, that the default was to be judicially
determined in a suit instituted for the purpose. The ancient
doubt was, whether a corporation could be dissolved at all for
a breach of trust. It is now well settled that it may, but then
it must be first called upon to answer. No advantage can be
taken of any *non-user* or *mis-user,* on the part of a corporation,
*by any defendant in any collateral action.*

If as between the corporation and the defendant, (*says Mr.
Robinson, in his work on Practice, vol.* 3, *p.* 327,) there be a suffi-
cient consideration for a note or contract made to or with the
corporation, an action may lie thereon, although for abuse of
its powers the corporation may be answerable to the govern-
ment which created it. For the purpose of collecting its debts,
its charter may still, as between the corporation and a debtor
to it, be deemed in existence, notwithstanding the charter may
have been violated. *For such violation cannot be made the sub-
ject of judicial investigation in a collateral suit.* The only evi-
dence competent to prove the forfeiture of a charter is the judg-
ment of a court directly on the point, and no inferior evidence
can be admitted for the purpose, unless it is otherwise directed
by the Legislature in express terms.

It cannot be shown in defence to the suit of a corporation (*say Angel & Ames on Corp.* 507, *2d Ed.*) that the plaintiffs have forfeited their corporate rights by *mis-user* or *non-user*. Advantage can be taken of such forfeiture only on process on behalf of the State, etc., and individuals cannot avail themselves of it in collateral suits, until it be judicially declared. A plea or answer, therefore, as a general rule, to the suit of a corporation, *showing facts upon which in a direct proceeding, the corporate powers might be declared at an end, is not sufficient.* It must show that they have ceased. The *Brookville and Greenburg Turnpike Company,* 8 *Ind. Rep.* 494.

This general principle was recognized by this court in *Booker ex parte,* 18 *Ark.* 338, *and Hammett vs. Little Rock and Napoleon R. R. Co., January Term,* 1859.

The principle was also applied in the following cases, among others that might be cited. *Sewall's Falls Bridge vs. Fisk & Norcross,* 3 *Forter,* 171; *State vs. Fourth, N. H. Turnpike,* 15 *N. H. R.* 166; *Conn. & Pass. Rivers R. R. Co. vs. Bailey,* 24 *Vermont,* 476; *Harris et al. vs. Nesbit.* 24 *Ala.* 398.

Upon these authorities it may be safely announced as a general rule, that in a suit by a railroad company or other corporation, against a subscriber for assessments upon his stock, he is not permitted to show, by way of defence to the action, that the corporation has, by mis-user, or non-user, violated or failed to comply with the provisions of its charter.

The case of the *Central Plank Road Company vs. Clemens,* 16 *Mo.* 359, is similar in all respects to the one now before us. It was an action to recover installments assessed on stock subscribed by Clemens. He set up as a defence that the President and Directors of the company, in locating the road, unnecessarily and improperly departed from the route designated in the articles of association, etc

In passing upon this ground of defence, the court said: " The third ground of defence is equally unavailing. If the Directors of the company, in locating the road, have departed from the route proposed in the articles of association, so as in fact

**452**        CASES IN THE SUPREME COURT

M., O. & R. R. R. R. Co., vs. Cross.        [May

to make it a different enterprise from that in which the defendant engaged, and different from that which is authorized under the law, they have violated their duty to the company, and to the law, but not more to the defendant than to every other member of the company. If their act stands as the act of the company, and is such a departure from the route proposed in the articles, as to be a different enterprise, then the whole corporate franchise may be taken from the company by the appropriate proceeding. But in the present suit, for an installment due *upon the defendant's stock, this question cannot arise.* The authorities cited from New York and Massachusetts, to show that an *alteration in the charter* of an incorporated company, made after the original subscription of stock, *materially changing the charter and objects of the company, discharges a subscriber* from his obligation to pay upon his original subscription, *when he has refused to consent to any such alteration,* do not apply to a case like the present."

If, when a subscriber for stock is sued for calls made upon it, he may defeat the action by showing that the directors of the company have violated the charter by departing from the route or points fixed by it for the location of the road, there is no good reason why he may not defeat the suit by making it appear that they are appropriating the funds of the company to unauthorized purposes; or that they are not constructing the road upon the plan designated by the charter; or that the directors and officers of the company are consuming the funds for their own purposes, and utterly neglecting to progress with the enterprise; or wholly incompetent to prosecute it to a successful termination; or any other abuse of the charter. If the door were once opened for such defences, in every suit brought by a corporation, the conduct of its directors would be canvassed, and collateral issues would become interminable.

As above remarked, the charter is the law of the subscriber's contract. If the directors undertake to make an unwarrantable departure from the provisions of the charter in the location, or construction of the road, or in the appropriation of the funds

of the company, the stockholder has his remedy by injunction. Not to enjoin the collection of calls due upon his stock, (*Booker, ex parte,* 18 *Ark.*) but to restrain the corporation from the particular violation or abuse of its charter complained of. *Dodge vs. Woolsey,* 18 *How. U. S. R.* 331, 341.

There are cases in which it has been held, that where one subscribes for stock in a company chartered for the construction of a road upon a particular route, and afterwards a majority of the stockholders procure the passage of a law amending the charter, and making a radical change in the original route, the subscriber, not consenting to such alteration of the charter, is released from his contract of subscription. (See cases collected in *Pierce on Am. R, R. L.* 78 *to* 100.

In such case the enterprise to which he subscribed is abandoned, and the law of the contract being in effect repealed, it is no longer in his power to ask the Court of Chancery to compel the corporation to locate and construct the road npon the original route: nor is it within the power of the State to seize the franchises of the corporation, on account of such departure from the original route, after it is sanctioned by a legislative act. Under such circumstances it is but just to hold that the subscriber, not asking, consenting to, or acquiescing in the amendment of the charter, should be released from his contract of subscription.

But such is not the character of the defence interposed in the case now before us. The plaintiff in error complains of an alleged violation of the charter under which he became a stockholder, by the company, in locating the road, and not of a Legislative change in the provisions of the charter in reference to its location. In other words, he attempts to set up a mis-user of the charter as a defence to the action, which is a collateral issue.

It is not proper in this case to determine what effect the 4th section of the act of the 14th January, 1857, (*Pamph. Acts,* 1856, p. 112,) had upon the rights of subscribers, who did not procure

454        CASES IN THE SUPREME COURT

M., O. &. R. R. R. R Co., vs. Cross.        | MAY

or assent to the passage of the act, because the act has been passed since the trial of this cause.

It was not competent for the defendant in error to prove (his subscription being general and unconditional) declarations made by Dockery in his speeches, etc., as to the location of the road, unless the substance of such declarations had been incorporated in the contract of subscription, and a compliance therewith, by the corporation, made a condition precedent to the payment of assessments upon the stock, etc., *Con. & Pass. River R. R. Co., vs. Bailey,* 24 *Vermont,* 477; *McMillan vs. Maysville & Lexington Railroad Company,* 15 *B. Monroe,* 218.

It follows that the court below did not err in excluding the evidence introduced by the parties in relation to the violation of the provisions of the charter in the location of the road: that the verdict of the jury was wholly unwarranted by the evidence, and that the court should have sustained the motion for a new trial.

The judgment must therefore be reversed, and the cause remanded with instructions to grant the plaintiff in error a new trial, etc.