96 CASES IN THE SUPREME COURT

M. O. & R. R. R. R. Co., vs. Gaster. [June

## M., O. & R. R. R. R. Co. vs. Gaster.

The act of January 14, 1857, amending the charter of the Mississippi, Ouachita and Red River Rail Road Company, sanctioning a material and unwarrantable departure from the route of the road as designated in the original charter, having been accepted by the president and directors of the corporation, acting by authority of a *majority of the stockholders*, was binding on such of the stockholders as solicited or assented to the passage of the act; but such stockholders as did not assent to it were released from their contracts of subscription. ( *Witter vs. M., O. & R. R. R. R. Co.*, 20 *Ark.*, 490.)

An act of the general assembly. altering the charter, to be binding on all the stockholders, must be accepted by a vote of the *majority of the stock*, exclusive of that taken by the state, at a meeting of the stockholders regularly convened for that purpose, as provided by the 21st section of the original charter of the company. *Ib.*

The charter of a private corporation is an executed contract between the government and the corporators, and the legislature cannot repeal, impair or alter it in a matter materially affecting the interest of the corporators against their consent, or without the default of the corporation judicially ascertained.

The board of directors may act for and represent the stockholders in matters within the scope of the powers conferred upon them by the charter; but when they undertake to accept a legislative amendment of the charter, they act beyond the scope of their authority, and their act is not obligatory upon the corporation.

The plea, failing to show that the act of 14th January, 1857, changing the provisions of the charter, as to the location of the road, was so accepted as to make it valid and binding on the corporation, held bad on demurrer.

If the directors were proceding to apply the funds of the company in building the road on a line materially variant from that designated in the charter, the defendant had his remedy by injunction. (*M., O. & R. R. R. R. vs. Cross*, 20 *Ark.*, 443.)

### *Error to Drew Circuit Court.*

Hon. JOHN C. MURRAY, Circuit Judge.

HARRISON, for plaintiff in error.

WINTER, contra.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

This was an action of assumpsit, by the Mississippi, Ouachita and Red River Rail Road Company against Daniel Gaster, for assessments upon twenty-five shares of the capital stock of the company subscribed by him. The case has been here before. See 20 *Ark. Rep.*, 455–461. After the cause was reversed and remanded, the plaintiff filed an amended declaration; to which the defendant interposed five pleas.

The fourth plea, upon which the case was determined, is as follows:

" That John Dockery and others, on the 29th day of November, 1852, filed in the office of the secretary of state, etc., a charter of the Mississippi, Ouachita and Red River Rail Road Company, drawn under an act entitled, ' an act granting corporate powers for certain purposes,' which charter was drawn up for the purpose of constructing a railroad from a point on the bank of the Mississippi river, at or near Gaines' Landing, in the state of Arkansas, through or near Camden, on the Ouachita river, thence to some point on the Red river at or near Fulton, thence to some point on the boundary line between the states of Texas and Arkansas; which charter, by an act of the general assembly of the state of Arkansas, approved January 22d, 1855, became a public law; and that under the provisions of said charter said defendant became the holder of twenty-five shares of the capital stock of said company; and that on the 23d day of October, 1853, and after said defendant's said subscription of said sums of the capital stock of said company, the said company commenced opening said rail road, by an alleged authorized survey thereof, and to locate and establish the same, beginning at the Mississippi river at Ferguson's point, four miles, on an air line, and about eight miles, by the usually traveled road, north of Gaines' Landing, thence through Camden, thence to a place on Red river, called the Cut-off, twenty-one miles, on an air line, and forty miles, by the usually traveled wagon road, north of said town of Fulton, and thence to a place called *Texarkana*, on the boundary line

8

98 CASES IN THE SUPREME COURT

M. O. & R. R. R. R. Co., vs. Gaster. [JUNE

between said states of Texas and Arkansas: and defendant avers that a part of the stock-holders of said company, on the 14th of January, A. D., 1857, and after said defendant had become such stock-holder, in said company as aforesaid, procured the passage, by the general assembly of the state of Arkansas, without the knowledge or consent of said defendant, of an act by which said above described location and termini of said rail road was adopted in all respects, and made as valid and binding as if specified at length in said original charter, and that said amendatory act of the 14th January, 1857, was never accepted by a vote of a majority, nor of all the *stock* of said company, or by said defendant; yet the board of directors of said company have adopted the same, and are now building and constructing said rail road on the line and between the termini last aforesaid, and not on the line and between the termini designated in the charter under which he became the holder of said shares of the capital stock of said company mentioned in said plaintiff's declaration, but on a line and between termini materially different, and this he is ready to verify," etc.

To this plea the plaintiff demurred on the following grounds : " It is not alleged in said fourth plea that the said alleged act of the general assembly of the 14th of January, 1857, amendatory of said charter, was procured, accepted or adopted by a majority of the stock-holders of said company, and because the same is otherwise uncertain, informal," etc.

The court overruled the demurrer to the plea, the plaintiff rested, the defendant withdrew his other pleas, final judgment was rendered in his favor, and the plaintiff brought error.

In *Witter vs. Miss., O., & R. R. R. R. Co.*, 20 *Ark.*, 490, we held that the company, in abandoning Fulton, and adopting the Cut-off, as a crossing point on Red river, in the location of the rail road, made a material and unwarranted departure from the route designated in the original charter under which Witter, like Gaster, became a subscriber for shares in the capital stock of the company:

That the act of 14th January, 1857, amending the charter, and sanctioning this change in the location of the road, accepted, as it was agreed in that case, by the president and directors of the corporation, acting by authority of a *majority of the stock-holders*, was binding upon such of the stock-holders as solicited or assented to the passage of the act; but that such of the stock-holders as did not assent to the act were released from their contracts of subscription:

That an act of the general assembly, altering or amending the charter, to be binding upon all of the stock-holders, must be accepted by the vote of a *majority of the stock*, exclusive of that taken by the state, at a meeting of the stock-holders, regularly convened for that purpose, as provided for by the 21st section of the original charter of the company:

That it did not appear in that case that a *majority of the stock* was owned or represented by the majority of the stock-holders who accepted the act of 14th January, 1857, sanctioning the change in the line of the road, etc.

In the case now before us, the plea alleges that a *part of the stock-holders* procured the passage of the act of 14th January, 1857, approving the change in the location of the road referred to above, without the knowledge or consent of the defendant. That the act was never accepted by a vote of a *majority of the stock*, nor of all of the stock of the company, nor by the defendant; but that the board of directors had adopted the same, etc.

The object of the plea was to show that the defendant was legally discharged from his contract of subscription to the capital stock of the company, upon which the suit was founded, by means of a legislative change in the terms of his contract, made without his consent.

The plea sufficiently avers that the act of 14th January, 1857, was not accepted by a vote of *a majority of the stock, etc.*, and consequently was not binding upon all of the stock-holders. It also negatives the defendant's assent to the act, and shows that he

was not bound by it. But the plea fails to show that the act was valid and binding upon the corporation.

It avers that a *part of the stock-holders* procured the passage of the act, and that the *board* of *directors* had *adopted the same*. But it fails to aver that a *majority of the stock-holders* procured the passage of the act, or that the board of directors in adopting the act, acted by authority of a *majority of the stock-holders*.

The British parliament, among other unlimited powers, claims that of altering and vacating charters ; not as an act of ordinary legislation, but of uncontrolled authority. It is theoretically omnipotent. Yet in modern times, it has attempted the exercise of this power very rarely. But the king cannot abolish a corpo_ration, or new-model it, or alter its powers, without its assent. This is the acknowledged and well known doctrine of the common law. *Webster, in Dartmouth College, vs. Woodward,* 4 *Wheat.*, 560.

It is a happy feature in the constitution of our own government, says Mr. Angell in his work on corporations, that the power of the legislatures of the different states, resembles in this respect the prerogative of the king of Great Britain, who may create, but cannot dissolve a corporation, or, without its consent, alter or amend its charter.

In the 10th section of the first article of the constitution of the United States, (which was the supreme law of this state at the time the charter in question was granted, and at the time the amendatory act of 14th January, 1857, was passed,) it is declared that no state shall pass any law *impairing the obligation of contracts*. Under this clause, it has been well settled, that the charter of a private corporation, whether civil or eleemosynary, is an executed contract between the government and the corporators, and that the legislature cannot repeal, impair or alter it, in a matter materially affecting the interest of the corporators, against their consent, or without the default of the corporation judicially ascertained. *Ang. on Corp.*, 801 ; *Dartmouth College vs. Woodward*, 4 *Wheat.*

In Witter vs. M. O., & R. R. R. R. Co., it was assumed in the defence, and not controverted, that the act amending the charter, procured by a majority of the stock-holders, was binding upon the corporation, and we decided that the stock-holders, who did not assent to it, were released from their subscriptions.

But surely, upon general principles, if a majority may, less than a majority of the stockholders cannot accept an act of the legislature making a material change in the provisions of the charter, so as to bind the corporation.

The board of directors may act for and represent the stock-holders, in matters within the scope of the powers conferred upon them by the charter, but when they undertake to accept a legislative amendment of the charter, they act beyond the scope of their authority, and their act is not obligatory upon the corporation. They are but the agents of the corporators, acting under limited powers, and when they exceed their authority, their acts are not binding upon their principals, unless they are ratified, or acquiesced in by them.

The plea failing to show that the act of 14th January, 1857, changing the provisions of the charter, as to the location of the road, was so accepted as to make it valid and binding upon the corporation, the defendant was not thereby legally released from his contract of subscription to the capital stock of the company; and if the directors were proceeding to apply the funds of the corporation in the construction of the road upon a line materially variant from that designated in the charter, he had his remedy by injunction, as held in *M. O., & R. R. R. R. Co.*, vs *Cross*, 20 *Ark.* 443.

The judgment must be reversed, and the cause remanded with instructions to the court below to sustain the demurrer to defendant's 4th plea.