## Booker, *Ex parte*.

It is now well settled that a private corporation may be sued by one of its own members, either at law or in equity, under particular circumstances, or a special state of facts—as where it attempts to do acts which it is not warranted in doing by its charter: in which case it may be restrained by injunction.

But where a corporation sues a stockholder for calls upon his subscription to its stock, which it had authority to do, it cannot be restrained by injunction from the collection of the money on the ground of a departure from its charter in reference to matters not connected with the suit—as that it has done other acts amounting to a breach of its chartered privileges.

So, where a Railroad Company obtains judgment against one of its stockholders for calls upon his subscription, it cannot be enjoined by a Court of chancery from enforcing the judgment upon allegations that the work on the road was not progressing in the manner prescribed in the charter, or that the company contemplated a departure from the route or a change in the termini designated therein.

Where a subscriber to a public work permits it to be carried on, for a length of time, without objection, he will be regarded, in equity, as acquiescing in the acts done, and will not be relieved from the payment of his subscription on the ground that the plan has been changed and the work is of no benefit.

### *Petition for a Mandamus.*

GARLAND for the petitioner.

For violation of a charter in appropriating funds to different purposes than those contemplated by the charter—depreciating stock, etc., stockholder can enjoin collection of his stock in equity. *Dodge vs. Woolsey* 18 *Howard* 331, *and authorities cited:* and also 16 *How.* 288; 11 *Geo.* 569; *Angell & Ames on Corp. sec.* 312; *Robinson vs. Smith*, 3 *Paige* 231; *Am. Law. Reg. Jan.*, 1853, *p.* 154; *New Haven R. R. Co. vs. Croswell*, 5 *Hill* 385.

Mr. Justice HANLY delivered the opinion of the Court.

This is an application made to this Court for a mandamus to the Judge of the 4th judicial Circuit, to compel him under the

provisions of the 5th *section* of the 86th *chapter* of the *Digest p.* 592, to grant an injunction upon a bill to him presented, showing that the Hon. A. A. STITH, Judge of the 6th Circuit, was disqualified from acting thereon, and having the endorsement of his refusal of such injunction, as required by the statute in such case.

The substance of the bill, so far as it may be material in the present enquiry, is, that on the 29th November, 1852, the Mississippi, Ouachita and Red River Railroad Company, were created and constituted a body politic and corporate, by that name and style, under and by virtue of the provisions of an act of the legislature of this State, approved 8th January, 1851, entitled " an act granting certain powers, etc." (See *Pamph. Acts* 1850–1, *pages* 86–7:) that some time during the fall of 1852, the complainant, under the charter of the company, subscribed the sum of $500 to the capital stock thereof, and thereby became, and was a stockholder for that amount; that the design and object of the creation and organization of the company were to secure and ensure the construction of a railroad in this State from a point on the Mississippi river, at or near Gaines' Landing, through or near Camden on the Ouachita river, to some point on Red river at or near Fulton, thence to some point on the boundary line of this State and the State of Texas. That after the complainant became a Stockholder in the company, it was determined by the board of directors thereof, chosen under the charter, that calls upon the stock subscriptions should be made at certain periods thereafter; that the calls upon the sum subscribed by the complainant on the 29th April, 1856, amounted to the sum of $270; that he had not paid any part or portion of this amount, up to the 20th Oct., 1856, when the company brought suit therefor, on the law side of the Hempstead Circuit Court; that the suit is still pending in that Court undetermined; that he has made no defence thereto, and does not intend so to do, being advised by counsel, as he alleges, that the proper forum for his defence is a Court of equity: offers to let judgment go against him on the law side of the Court, and proposes to waive errors, when such judgment is actually rendered. The

bill further, in substance, states that it is provided by the charter, when the construction of the road is begun, it shall be commenced simultaneously at its terminus on the Mississippi, and its crossing of the Ouachita river, progressing at each point in a westerly direction; that since the complainant became a stockholder, the board of directory, in utter disregard of the charter, have caused large sums of money to be expended in payment for work and labor done on the road, between its commencement on the Mississippi, and its crossing on the Ouachita river, instead of proceeding, *pari passu,* with the work on that part of the road lying west of the Ouachita river, which they have omitted to do; that within the same period the directory have established the line of the road, so that it will not cross Red river at, or near Fulton; but, on the contrary thereof, at a point some 15 or 20 miles distant therefrom, less eligible, and clearly one which will cost the company much more to construct a crossing of that stream: that the chief object and the main inducement, which operated upon and influenced the complainant to become a subscriber to the stock of the company, were to advance the country intermediate Fulton on Red river, and the crossing of the road on the Ouachita river, and if he had not confidently believed the requirements of the charter, in all their force, would have been faithfully and to the letter carried out by the company, he never would have subscribed for any portion of the stock thereof.    The bill further, in substance, alleges that the company, by omitting to proceed with the work on the road at its crossing on the Ouachita river in a westerly direction as it progressed at the end on the Mississippi river, and its diversion from Fulton on Red river to the point 15 or 20 miles distant, operated *per se* as a violation of the charter, and as a consequence thereof, that the complainant thereby became and was absolved, in equity, from the payment of his entire stock liability, including the amount sued for, and asked to be enjoined.

A printed copy of the charter was exhibited by reference to the acts of the assembly for 1854–5.

The Mississippi, Ouachita and Red River Railroad Company

was made sole defendant to the bill, and against whom the injunction was prayed to restrain the collection of the complainant's stock subscription, either by execution or otherwise, etc.

For the purposes of this application, we will consider the allegations of the bill as not only true, as we are bound to do upon an *ex parte* proceeding of this sort, but sufficiently full and explicit, to the end that we may at once reach and dispose of the real merits of the application.

It was a question of serious doubt, until comparatively a recent date, whether a private corporation could, under *any* circumstances, be sued, either at law or in equity, by one of its own members. (See *Waning vs. Catawba Co.* 2 *Bay* (*S. C.*) *R.* 109. *Cunliffe vs. Manchester & Bolton Canal Co.*, 1 *Myl. & Russ. Ch. R.* 131 *and note. Dodge vs. Woolsey*, 18 *How.* (*U. S.*) *R.* 331.

But it is now well settled that a private corporation may be sued by one of its own members, either at law or in equity, under particular circumstances, or a special state of facts. (See *Ang. & Am. Corp. sec.* 390-1, and the authorities above cited: also, *Pearce vs. Patridge*, 3 *Met. R.* 44. *Hill vs. Manchester and Salford Water Works*, 5 *Adol. & Ellis R.* 866.)

And a special case in which a private corporation may be sued in equity by one of its members, is, when the company attempts to do acts which they are not empowered to do under the acts of the legislature from which they derive their authority to act as such; and in such case it has been holden that a Court of chancery may restrain them by injunction, from the commission of the *threatened* and *impending* usurpation. See *Ang. & Am. on Corp. sec.* 391, *Ware vs. Grand Junction Water Co.* 1 *Myl. & Rus., Ch. R.* 126. *Bagshaw vs. Eastern Counties Railroad Co.* 1 *Beav. Ch. R.* 1.)

In the last case cited, the objection was expressly taken on the part of the corporation, that the corporation ought not to a party to the suit. But the vice chancellor, Sir James Wagram, said he had no hesitation in overruling the objection; that the acts of the directors (in diverting the corporate moneys for a purpose different from what was originally contemplated,

against the will of a single share-holder) were the acts of the directors as the representatives of the company, and as such were the acts of the company itself, and that the company would not be bound unless it were a party in its corporate character.   See also, *Coleman vs. Eastern Counties Railway Co.* 10 *Beav. Ch. R.* 1, to the same point.

The result of the authorities, therefore, clearly is, that a corporation, when acting within the scope of, and in obedience to, the provisions of its constitution, the will of the *majority* duly expressed at a legally constituted meeting must govern; yet *beyond the limits of the act of incorporation,* the will of a majority cannot make the act valid: and the powers of a Court of equity may be put in motion at the instance of a single share-holder, if he can show that the corporation are employing their statutory powers for the accomplishment of purposes not within the scope of their institution.   See *Ang. & Am. on Corp. sec.* 393, *note* 2, and authorities there cited.

We will endeavor to apply the foregoing principles to the case at hand.   The bill shows, by reference to the charter, that the company was invested with full power and authority to sue and be sued, plead and be impleaded, by their proper style and description, in any of the Courts of this State, to the same extent and like effect as if they were a natural person.   There can be no doubt then, and the fact seems to be admitted by the bill, that the Mississippi, Ouachita and Red River Railroad Company were not acting beyond the powers delegated to them by their constitution, when they commenced the suit in question, in the Hempstead Circuit Court, against the complainant for the recovery of his stock indebtedness due up to that time—this was strictly within their powers expressly delegated, and, consequently, was what they had a right to do under the charter.   If they had a right to sue, as they evidently had, it follows as a consequence, that they had a right to pursue their remedy to judgment, and thence to execution and satisfaction, as incidents of the general power conferred on them *to sue:* for the right to sue without the right to enforce judgment in case of recovery would be no right at all.

The corporation, in the act of instituting the suit against the complainant to collect the arrearages of stock calls, were not " *proceeding beyond the limits of their constitution*," and consequently, did not subject themselves to the annoyance of a suit by one of their members, which is the test instituted by the laws to determine in such cases, when the jurisdiction of a Court of equity may be invoked, as we have already shown by the foregoing propositions and the authorities cited in support of them.

As we understand the case made by the bill, the complainant rests his whole relief prayed for therein, as to the injunction to restrain the corporation from suing out execution upon the judgment at law, and enforcing the payment thereof, upon the grounds of a departure from the charter by the corporation, in reference to matters not connected with the suit at law.

The Court of chancery is asked to restrain the corporation from the commission of a lawful act, because, forsooth, it is charged against them that they have, on other occasions, done other acts, which, in the opinion of the complainant, amounted to a breach of the chartered privileges conferred upon them, or duties imposed on them, by the terms of their constitution. If the acts complained of in the bill, are unwarranted by the charter, the complainant may, under the law as we have laid it down, proceed against the corporation. But when? Certainly not until they attempt, or are, in the act of diverting the road from its prescribed destination (as it is contended) on Red River, or the means of the company, including the stock paid in by the complainant, is attempted to be appropriated in an unauthorized and unwarranted way. To anticipate a mal or mis-application of the fund sued for before it comes to the hands of the Treasurer of the corporation, and prevent its going into the corporation coffers, would be, to our minds, a stretch of chancery power in the exercise of that faculty peculiar to Courts of equity whereby *preventive justice* is administered, which would be unwarranted by the precedents or maxims of the Courts. To stop the funds of the corporation before they reach the hands of the Treasurer, where their safe custody is secured by salutary guards,

as well for the company, whose special custodian he is, as for the individual members of the corporation, whether their interest may be regarded as consistent or antagonistic to the company, would be to expose them to loss or waste. When its fund is once in the possession of the treasurer, he is made the special bailee or trustee of it, by operation of the law, and is unwarranted in relinquishing it except when appropriated and drawn for as the ordinances of the board prescribe. If the board should direct their withdrawal for an unauthorized purpose or object, they do so at their peril, and though the corporation may be liable, as we have before seen, we apprehend there can be no doubt of their *personal* or *individual* liability in the proper action. The complainant, even though his stock subscription should have been paid into the treasury, and thereby *confused* or *mixed* with the general funds of the corporation, would nevertheless have the same right as a private stockholder to restrain the appropriation of *any portion* of the general fund to unauthorized objects, as he would the particular fund paid by him before it became confused or mixed, or afterwards, if it could be identified. Hence, we say, the bill before us, is defective in not averring and charging, if the facts will warrant it, that not only were the company threatening to misapply the funds of the corporation, but that the directors were insolvent and worthless, and that the treasurer was faithless, and had given no bond with security, or that the sureties to his bond with himself were insolvent. Under such a showing as this, it is possible a Court of chancery might relieve him so far as to enjoin the collection of the stock debt, and leave it in the hands of the complainant, *provided*, he would secure it to the company, to be retained by him as special treasurer of that particular fund, or, in other words, as trustee for the stockholders under the directions of the chancellor.

There is another aspect in which this case may be considered, which is as conclusive upon this application as the one we have just disposed of, and we turn to that for the purpose of meeting all the grounds, as far as it is practicable or at all convenient, taken by counsel in this application.

The bill is silent as to what precise time the supposed diversion of the route of the road from Fulton to the point 15 or 20 miles distant occurred. It is also silent as to the time at which the company ceased to progress with the work on the road, west of its crossing of the Ouachita river. It may be fairly intended and inferred by the whole case made by the bill, that these grievances, if grievances they are, have existed from an early period in the history of the organization and operations of the company under their charter; for it is but just to presume that the company would have laid out and defined the route of the entire road, before they would proceed to construct any part of it. If so, it has been holden that a subscriber to a public work, who has permitted it to be carried on without objection, cannot be relieved from the payment of his subscription on the ground that the plan was changed, and the work is of no benefit. See *Doane vs. Treasurer of Pickaway, Wright's (Ohio) R.* 752.

In the case at hand, the bill conclusively shows that the company was incorporated as far back as November, 1852, about which time the complainant became one of its stockholders. It had proceeded from that time till April, 1856, making calls, (and of course organized) upon the stock subscriptions, when the calls due on the complainant's subscription of $500, amounted to the sum of $270, as shown by the bill. The calls on the stock subscriptions of the other stockholders must have been in the same ratio, showing very clearly that the company had absolutely expended or appropriated over one-half of all the stock subscribed to some object or other, not specifically shown, however, by the bill. Why, and how was so much money appropriated? We must presume, in the absence of an averment to the contrary, that this large amount was expended for legitimate objects, warranted by the charter—such as paying the expenses incident to the surveying and laying out the road between the termini, not costing, probably, a twentieth part of the amount received from calls paid in, and the residue, as it should have been, appropriated to the construction of the road

between its commencement on the Mississipppi, and its cross-
ing of the Ouachita river, as shown by the bill. The laying
out the road, and its diversion from Fulton to a point 15 or 20
miles distant, must have occurred more than four years before
the first complaint is made by the complainant in respect to
that fact, for we have no notice of any complaint having been
made by him until he was sued on his stock subscription. And
so it may be said in reference to the complaint about the man-
ner in which the work has progressed, etc. His quiescence on
these subjects must be regarded in equity as an acquiescence
in the acts of the corporation in respect to them, otherwise the
greatest injustice and injury might be inflicted upon the whole
body of stockholders, as well as the community at large, who
have an interest in the successful prosecution of the road to
final completion.

We presume no case can be found in the books of reports,
where a stockholder in a private corporation has been permit-
ted to restrain the collection of his stock subscription on ac-
count of the company having violated their charter, except in
cases where the company, by a vote of a majority, have obtain-
ed, from the supreme law making power of the State, a change
in the constitution of the company, which is accepted by the
majority, and materially affects the interests secured by the
original act of incorporation. And the relief, in such cases as
these, is placed upon the ground, that the acceptance under
the new act is a surrender of the old, and consequently, that
none are bound by the acceptance and surrender, except those
who absolutely assent to it. For violations of chartered pow-
ers, breaches of chartered duties, and encroachments upon
chartered privileges, the remedy to the individual affected is
*remedial* and *preventive*. The first, by an action at law, or
suit in equity, for the grievance already done; and by injunction
for the second, or those *impending* and *threatened*. The public
may have redress by the appropriate proceeding to resume the
franchises, which have been abused. And we are sustained in
this conclusion by the very authorities to which we have been

referred by the complainant; and by a host of others bearing on the same point. See, also, *Ang. & Am. on Corp. sec.* 776–'7.

In every view that we can regard the application, we are forced to refuse the mandamus.