JOHN G. LOWE, APPELLEE, V. FRANCIS G. KEENS,
APPELLANT.

FILED JANUARY 3, 1912.    No. 16,926.

1. **Pleading**: INCONSISTENT PLEAS: APPEAL: WAIVER. Where defendant goes to trial on the issues raised by the pleadings as a whole, without attacking the reply in any form on the ground that it is inconsistent with the petition or that it changes the cause of action, it may be held on appeal that he waived those objections.

2. **Contracts**: ACTION ON SUBSCRIPTION: ESTOPPEL. In a suit on a subscription obligating defendant to pay one-fourth of the cost of the nave of a church edifice, plaintiff, under proper pleadings, may prove facts showing defendant was estopped by subsequent conduct and statements from urging the defense that the entire building, including such nave and the chancel, was constructed at one time, instead of the nave alone, as contemplated by the subscription and the original plans.

3. **Evidence**: COST OF CONSTRUCTION OF BUILDING. The cost of a nave constructed with the chancel and other parts of a church edifice may be shown by builders and contractors who are competent to testify to separate items comprising the total cost of the entire structure and to the proportion and amount attributable to the nave.

4. **Appeal**: EXCESSIVE RECOVERY. In an action at law, excess in the amount of the recovery should be called to the attention of the trial court by the motion for a new trial to make the error available on appeal.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*H. M. Sinclair* and *W. D. Oldham,* for appellant.

*J. N. Dryden* and *E. C. Calkins, contra.*

ROSE, J.

This is a suit on a subscription of which the following is a copy: "Kearney, Nebraska, June 7, 1907. I hereby agree to pay one-fourth the cost of the 82 feet of church edifice with tower, voted on April 11, 1907, to be built by

the building committee of St. Luke's Episcopal Church, to John G. Lowe, Treasurer of St. Luke's Episcopal Church Building Fund, for the benefit of St. Luke's Church, Kearney, Nebraska, and for the purpose of erecting upon their present site in the City of Kearney, Nebraska, a permanent church building; said subscription to be paid as follows: One-fourth the amount of each and and every builder's estimate when allowed and paid by the finance committee of said church building fund. Francis G. Keens."

Among other things, it is alleged in the petition: There was full compliance on the part of plaintiff with the terms of the contract. The total cost of that part of the church edifice described in the subscription was $18,907.96. Builders' estimates therefor were allowed and paid prior to April 28, 1909. Defendant made payments as follows: October 12, 1907, $175; December 4, 1907, $250. There was a prayer for judgment in the sum of $4,336.99—the balance due. The signing of the instrument is admitted in the answer, but defendant alleges that it was signed pursuant to subscriptions taken April 11, 1907, at a meeting of the vestry, the minutes of which showed it was moved and carried that "We procure plans for a church of about the following dimensions, viz., 130 ft. long, 48 ft. wide, 48 ft. high, and that we complete at this time a part equal to about 82 ft. in length, with the tower." In the answer it was further alleged, in substance: The rector invited gifts toward the expense of the building, and obtained defendant's pledge with that of twelve others for contributions to be expended upon the 82 feet of church edifice mentioned, commonly called the "nave." Afterward, but before defendant executed the contract, plans for the nave were procured according to the action taken by the vestry. Defendant signed and delivered the contract relying on such plans, and in accordance therewith the foundation was constructed. It was upon the cost of such foundation that defendant made his payments. He left the United States January 1,

1909, and was absent several months, but at the time of his departure no work of construction had been done except upon the foundation. During his absence, and without his knowledge or consent, the plans for the edifice to which he had subscribed were abandoned and others for a building materially different in dimensions, materials and foundation were substituted and used. It was a condition of his obligation that no debt should be incurred, unless funds for the payment thereof were provided, and that the edifice, when completed, should be free from debts or liens. In disregard of this condition the property was mortgaged for $8,000, and other debts were incurred, but not paid. Though the building committee was instructed to let to the lowest competent bidder a contract for the building of the superstructure of the nave, all bids were fraudulently rejected and the building was constructed by hired labor under direction of a superintendent, thereby making an excessive expense of $10,000, to which defendant did not agree to contribute. The reply is as follows:

"Now comes the above named plaintiff and, for reply to the answer of the defendant herein filed, says:

"(1) That it is true that defendant's subscription, as set forth in said petition, was made in pursuance of a pledge by him given at the meeting of the vestry of said church held April 11, 1907, the minutes of which are copied in defendant's answer.

"(2) That it is untrue that, before the execution of the defendant's contract set out in plaintiff's petition, plans were procured for the 82 feet constituting the nave of said church, or that such plans, or any plan, was submitted to the defendant as the one according to which said edifice should be erected.

"(3) That in truth and in fact the building committee of said church, which included the defendant, negotiated with an architect, named Guth, to prepare plans, elevations, working drawings, details and specifications for the erection of said church; and after discussing with

the said building committee the general features of the
church to be erected, the said architect prepared a plan
for the foundation of the nave and chancel of said church,
according to which said foundation was constructed; but
that he failed, neglected and refused to make and furnish
any further plans, elevations, working drawings, details
or specifications or any plan whatever for the superstruc-
ture of said church; and that no such plans were made
until another architect was employed, who made and
furnished the plans, other than the foundation, according
to which said building was constructed.

"(4) That the said defendant, after such other archi-
tect was employed, and knowing that the building com-
mittee was proceeding with the erection of said church
upon plans furnished by such second architect, when re-
quested to attend the meetings of the building committee
of which he was a member, told the other members of
such committee that he did not care to attend such meet-
ings, but that they should go on with the construction of
said building, and that the money which he had sub-
scribed would be ready for them.

"(5) That it is untrue that the obligation mentioned
in said petition was assumed by defendant on condition
that there should be no debt contracted in building said
edifice unless there were funds provided for the payment
thereof.

"(6) That after the commencement of said work, the
church received a gift made for the purpose of assisting
in the erection of a chancel at the same time with the
nave of said church; and that it was thereupon deter-
mined to construct the entire church; and that at the
time this determination was made the defendant was a
member of the building committee, approved the same,
and himself let the contract for constructing the founda-
tion of the chancel.

"(7) That it is true that the building committee of said
church, after having had and received bids for the con-
struction thereof, employed a superintendent and erected

said church under his direction; but that it is untrue that the cost of said church was in excess of the lowest bid received from any person offering to erect the same by contract.

"(8) The plaintiff further replying to the answer of said defendant denies each and every allegation therein contained not hereinbefore admitted or denied."

The case was tried to the court without a jury, and there was a judgment in favor of plaintiff for $4,299.25. Defendant has appealed.

The record contains evidence tending to prove: The foundation for the nave and the chancel was constructed under separate contracts according to plans prepared by the architect first consulted, but the building committee was unable to procure from him plans for the superstructure. Another architect was employed for that purpose and prepared the plans used for the superstructure of the entire building, including the nave with tower and the chancel, which were constructed together under his supervision. Different parts of the work were let to different contractors. One-fourth of the cost of the 82 feet of edifice with the tower, as described in the subscription, was shown by estimates of contractors and builders. There was also proof tending to show facts estopping defendant from asserting nonliability on account of changes and of the construction of all instead of a part of the church edifice.

It is first argued that the judgment should be reversed because the allegations of the petition are not sustained by the evidence. In an abbreviated form some of the propositions discussed by defendant under this head are: Plaintiff was only entitled to recover, if at all, upon the contract pleaded in the petition, and there is no evidence that the building committee complied therewith. It was not shown that the nave with tower—the part of the building to which defendant's subscription applied—was built according to the terms of the contract. On the contrary, the proofs show that a church 132 feet long, includ-

ing the nave with tower and the chancel, was constructed at one time as one building. While defendant subscribed to part of a church, to be completed according to the terms of his agreement, "at this time," the proofs show that an entire church to which defendant did not subscribe was built at one time. Defendant relies on the terms of his contract and insists that it must be strictly construed. To sustain the position thus taken, he insists that the reply is inconsistent with the petition and contains an attempt to change the cause of action on the written contract, in violation of the rules of pleading, and that consequently incompetent evidence in support of the reply does not establish defendant's liability on his contract. Without attacking the reply by motion or otherwise, defendant went to trial on the issues raised by the pleadings as a whole. While the pleadings were in that condition both parties adduced their proofs. Defendant had abundant opportunity to meet the case made by plaintiff, and it will be held on appeal that he waived the objections he now makes. *Miner v. Morgan,* 83 Neb. 400.

It is further contended that it was the purpose of the vestry, as shown by the minutes of its meeting April 11, 1907, to first erect the nave and tower; that defendant gave his subscription with that understanding, and that the erection of the entire building at one time under one plan of construction, including the separate part to which alone he agreed to contribute, was a departure from the contract, which released him from liability. It is apparent from the subscription, from the minutes and from other evidence that the vestry did not limit itself to any particular time for the construction of the chancel. The testimony indicates that, after defendant entered into his obligation, an incident arose which encouraged the vestry to undertake the building of the entire edifice at one time. To the construction of the chancel alone the sum of $5,000 was contributed from an unexpected source. There was nothing in the terms of defendant's subscrip-

tion to prevent the immediate use of this fund or the completion of the chancel. At the time it was received defendant was a member of the building committee, and as such participated in the making of a contract to enlarge the foundation to an extent sufficient for the chancel. A portion of the new fund, with defendant's knowledge and consent, was used for that purpose and the balance was reserved for the superstructure. Defendant, himself, therefore, was a participant in the change which extended the building operations beyond the nave and tower to which his subscription applied. That this was consistent with defendant's subscription was evidently the interpretation of both parties. In addition to defendant's contract, it is proper to look into his subsequent conduct to see if he is estopped to deny liability on account of the departure from the original plans. The purpose to ultimately build the chancel as well as the nave was clearly shown. In common with others defendant was active in a concerted effort to build the church edifice. The proof shows that he obtained a large part of the subscriptions. He was present at a meeting of the vestry when the subscription for $5,000 was appropriated exclusively to the construction of the chancel, and was an active member of the building committee when the foundation for the entire structure was built. Though he afterward declined to act with that committee, and made a trip around the world, he allowed the work to progress under the directions of his associates without making any protest or denying liability under his contract. There is also direct testimony that he said to one of the members of the building committee: "You can go ahead and build the church and get the plans. I don't want anything more to do with it. You are welcome to my money, but I don't want anything more to do with it." The evidence as a whole fully justified a finding by the trial court that defendant estopped himself by his conduct from making the defense that the dimensions, plans, and the time for construct-

ing the chancel had been changed. The doctrine of estoppel applies to subscriptions, and this is a proper case for its application. *Petty v. Trustees of Church of Christ,* 95 Ind. 278; *McCleary v. Chipman,* 32 Ind. App. 489; *Booker, Ex parte,* 18 Ark. 338; *Hall v. Thayer,* 53 Mass. 130.

The manner in which plaintiff was permitted to prove "the cost of the 82 feet of church edifice with tower" is also challenged as erroneous. The trial court admitted testimony of builders and contractors to show the cost of the separate items comprising the total cost of the entire structure and to show the proportion and amount attributable to that part of the building, one-fourth of the cost of which defendant agreed to pay. It has already been held that defendant is liable on his subscription. The amount of such liability could only be ascertained by some method of estimating the cost of the nave with tower, since that part of the edifice was not separately constructed. There is proof tending to show that a separate construction of the nave as contemplated by defendant would have cost more than the amount estimated by plaintiff's witnesses. The method approved by the trial court in estimating the cost of construction is one frequently employed, and seems, under the circumstances, to . be fair and proper, and one of which defendant has no just ground to complain. *Lambert v. Sanford,* 55 Conn. 437.

It is also insisted that in any event the recovery was excessive, but this question was not presented to the trial court by the motion for a new trial, and for that reason will not be considered on its merits here. *Hammond v. Edwards,* 56 Neb. 631.

No valid defense was established, and no prejudicial error has been found in the record.

AFFIRMED.