HENRY A. GUINZBURG, MICHAEL FRIEDSAM and SAM A. LEWISOHN,
Plaintiffs, Appellants, *v.* DAVID BLUSTEIN and ISIDOR BLUSTEIN,
Individually and as Copartners, Doing Business under the
Firm Name of DAVID BLUSTEIN & BROTHER, Defendants,
Respondents.

Supreme Court, Appellate Term, First Department, November (Filed December,
1923).

Subscriptions — agreement signed only by subscribers binding upon
acceptance — pleadings — parol evidence inadmissible to vary terms of
written agreement.

Where to an action upon a subscription agreement for benevolent purposes
calling for payment by the defendants of a certain sum in installments, it was
pleaded as a separate defense, in substance, that at a dinner at which the
agreement was entered into and signed by defendants it was orally agreed
between them and the representative of plaintiffs that the agreement should
involve no obligation and that in any event it was conditioned upon the con-
tinued prosperity of defendants' business, but it is evident that no such oral
modification of the express terms of the written instrument could be established,
an order denying plaintiffs' motion to strike out said defense will be reversed,
with costs, and the motion granted, with costs.

A contention that, directly contrary to the import of the written instrument,
there was no meeting of the minds of the parties, held untenable upon con-
sideration of the allegations of the separate defense.

Assuming that the signed paper did not become a contract until plaintiffs moved
to perform their part of the obligation, namely, to procure further subscriptions,
etc., defendants' contention that their offer to pay was revoked before the work
was done, was untenable as they neither revoked nor recalled their offer but
had undertaken to amend or change it.

The written agreement, though signed only by the defendants, became effective
when accepted by plaintiffs and parol evidence of a condition imposed upon
defendants' offer to pay was inadmissible under the rule which forbids parol
evidence to vary the terms of a written instrument.

APPEAL by plaintiffs from an order denying plaintiffs' motion to
strike out a separate defense.

*Max D. Steuer (Irving D. Lipkowitz* and *Gustave B. Garfield,* of
counsel), for appellant.

*Joffe & Joffe (Louis Joffe* and *Louis J. Naftalison,* of counsel),
for respondents.

BIJUR, J.    This action is brought upon a subscription agreement
for benevolent purposes calling for payment by the defendants
of a certain sum in installments.

The separate defense sets out that at a dinner given to further
the charitable purpose referred to, sums were allocated to be raised

by various groups of business men; that "based upon the prosperous condition of business in the fur industry during that year" a specified amount was designated to be raised in that trade; that "each of the said speakers solicited voluntary contributions from the said guests upon the basis of the conditions mentioned in the preceding paragraph" (referring, I presume, to the continuance of prosperous business conditions); that plaintiffs requested defendants to sign the subscription agreement, saying "that the said paper was a mere record to enable the plaintiffs to remind the defendants of their promise to donate the sum specified therein * * * and that it involved no obligation;" that "thereupon the defendants signed the said paper and before delivering it to the said representative of the plaintiffs, told him that defendants did not intend to bind themselves to a specific obligation to pay the sum mentioned * * * but * * * would donate that sum in the event and upon the assumption that the defendants' business would continue to prosper;" that the first installment was paid; that thereafter there was a sudden change in the business conditions of the fur industry which resulted in the loss of the entire capital assets of the defendants.

It will be observed that no question is raised concerning the validity of the subscription agreement on its face, the defense being in substance that it was orally agreed between the parties that the agreement should involve no obligation, and that in any event it was conditioned upon continued prosperity in defendants' business.

It seems to me to be quite evident that no such oral modification, indeed nullification, of the express terms of a written instrument can be established.

Respondents urge first that there was no meeting of the minds of the parties, which is directly contrary to the import of the paper itself. *Wilcox* v. *American Tel. & Tel. Co.*, 176 N. Y. 115, cited by respondents, does not aid them in this respect as that was a case of misrepresentation of the actual contents of a paper made to the plaintiff whose failing eyesight prevented his ascertaining the truth. Plaintiff's signature procured by this bald fraud was held ineffective to constitute the paper thus signed a contract at all. For the significance of the distinction between a misrepresentation as to the physical content of a paper, sometimes called a misrepresentation as to the factum or execution, and a misrepresentation concerning the consideration or "treaty," see *Whipple* v. *Brown Bros. Co.*, 225 N. Y. 237. Nor is the defense as stated by respondents in their brief "that the paper was signed by the

defendants upon *the representation* of the plaintiffs' representative that it was a mere record," etc., the defense being that the plaintiffs " *said* " that the paper was a mere record. There is no allegation that defendants relied upon such statement and no suggestion of any deceptive representation. Moreover, the other allegations of the defense indicate plainly that defendants do not claim to have been unfamiliar with the contents of the paper signed, but on the contrary that knowing its text fully they undertook to impress upon it by oral stipulation a complete variance with its terms. It may also be noted in passing that no claim is made that the instrument was delivered upon an oral condition precedent to its becoming effective, as explained in *Jamestown Business College Association* v. *Allen,* 172 N. Y. 291.

Respondents' second point is that some of the allegations which I have quoted are equivalent to an assertion of a rescission accepted. I cannot so interpret any of the allegations of the answer.

If we are to understand that theoretically any change or attempted change in an agreement is equivalent to a rescission or revocation of the instrument and the entering into a new convention, there would be some force in respondents' contention; but such is not the judicial interpretation of the terms employed. The distinction between a cancellation or rescission of one agreement and the making of a new one on the one hand, and the attempt to merely modify an existing agreement, is emphasized in the very case cited by respondents in this connection, namely, *Schwartzreich* v. *Bauman Basch, Inc.,* 231 N. Y. 196, affg. 188 App. Div. 960. Moreover, the notion of a revocation or recall of the instrument is not only absent from the allegations, but the very circumstances recited negative it, because, according to defendants' own story, the oral stipulations which they invoke were coincident with the execution and delivery of the paper.

Respondents' third point is that assuming the paper to be binding it was a mere offer to subscribe if certain work was done by plaintiffs and the answer alleged a revocation of this offer before the work was entered upon or accomplished.

Under this point respondents urge that the paper did not become a contract until the plaintiffs moved to perform their part of the obligation, namely, to procure further subscriptions, etc. We may assume that this claim is sustained by the authority cited, namely, *Presbyterian Church of Albany* v. *Cooper,* 112 N. Y. 517. I shall not undertake to discuss the question whether under the circumstances disclosed by the pleadings we might not assume that the very acceptance of the subscription by the plaintiffs imported a corresponding agreement on their part to undertake the efforts

requested, upon the principle suggested in *Wood* v. *Duff-Gordon*, 222 N. Y. 88, because appellants do not put forward that contention. Accepting respondents' proposition that the contract did not become finally binding until plaintiffs acted thereon I cannot concur in the claim that " their offer was revoked before the work was done," because, as pointed out above, that is just what respondents did not do, they did not revoke or recall their offer but undertook to amend or change it.

We come then to the ultimate reliance of respondents, namely, that assuming the paper to have been binding according to its terms it was a mere offer to pay, and that it was competent to impose thereon an oral condition before the consideration called for on the part of plaintiffs was entered upon or accomplished.

In discussing this point it is well to recall that the rule forbidding parol evidence to vary the terms of a written instrument is not a rule of evidence but one of substantive law. *Wallach* v. *Riverside Bank*, 206 N. Y. 434, 439. Such evidence is incompetent for the purpose sought because the written instrument is regarded as the depository of the expression of the final intent of the parties, or as it is sometimes said all prior oral negotiations are merged therein, or as Prof. Wigmore prefers to phrase it, the written instrument or memorial is the integration of a jural act and " therefore all other utterances of the parties on that topic are legally immaterial." Wigm. Ev. § 2425; Thayer Prel. Treat. Ev. 391, quoting Martin, B., in *Langton* v. *Higgins*, 4 Hurl. & N. 402. Of course, the presumption of law is one which the courts will apply if either or both of the parties appeal to it. It does not prevent them by mutual consent from conceding that such was not their intention and from permitting, therefore, the contrary to be shown. Such was the interpretation placed upon their conduct during the trial in *Brady* v. *Nally*, 151 N. Y. 258; 264, where the same learned judge who wrote in the *Wallace Case, supra,* pointed out that the appellant " had consented that it [namely, parol evidence as to prior negotiations] be considered."

The question then presents itself whether an instrument signed by only one party is protected by the rule. The answer is not far to seek. In *Long* v. *N. Y. Cent. R. R. Co.*, 50 N. Y. 76, 79, a bill of lading was held to be within the rule and a number of illustrations of instruments of similar form held to be subject to the limitation is given, including charter parties, bills of sale and the like. To the same effect *Cohen* v. *Morris European & American Express Co., Ltd.*, 151 App. Div. 672. In Jones Commentaries on Evidence (vol. 4, § 634) will be found a note citing many illustrations of so-called unilateral agreements held to be within the rule. In

*Mason & Hamlin Co.* v. *Gage*, 119 Mich. 361, the Supreme Court of Michigan applied it to a bond of indemnity, and our Court of Appeals to a deed in *Uihlein* v. *Matthews*, 172 N. Y. 154, and to a note in *Jamestown Business College* v. *Allen, supra.* In this connection it is significant that the courts have taken clear cognizance of the difference between an instrument intended to be contractual and one that is manifestly designed to be a mere receipt, voucher or memorandum, which was phrased by Martin, J., in *Komp* v. *Raymond*, 175 N. Y. 102, 109, as " informal and non-depositive," and, therefore, open to parol explanation or modification. See, also, Wigm. Ev. § 2432.

I assume that it can scarcely be doubted that the instrument in the case at bar on its face indicates the purpose of the parties to enter into a contractual relation. Had the respondents undertaken to recall what they denominate their offer after it had been signed by them and before it had become finally binding through reciprocal action by the plaintiffs, an altogether different question would arise. We may concede that such recall would be effective to terminate all possibility of the obligation becoming binding. As we have seen, however, that is patently not the meaning of the defense interposed. There is no pretense that defendants refused to deliver to plaintiffs the paper which defendants had signed, nor that they sought to recall it, physically or otherwise, after it had been delivered. On the contrary, they let it remain as the " integration " of the previous mutual oral stipulations of the parties until it became effective by the correlative acts of the plaintiffs; but they undertake to prove a variance from its terms. We are confronted, therefore, with the fact that the agreement became effective according to its terms and consequently merged in itself the oral negotiations or stipulations which defendants allege had taken place prior to the delivery of the instrument and prior to its becoming finally effective by the affirmative acts of plaintiffs. A convenient and instructive analogy might be found if we suppose a case where after one party had signed an agreement intended to be executed by both, the parties should orally agree upon modifications, and then the second party should sign the instrument as originally drawn. Plainly evidence of the prior negotiations or stipulations would be incompetent, and granting that once an agreement signed by one party and accepted or acted upon, as required, by the other, becomes subject to the rule, there seems to be no theoretical or practical distinction between the two cases. We may say in the one case as well as in the other that had the parties intended to effectuate the instrument according to the oral stipulations it should have been changed, but that the

act of final signature in the one case and the act of final acceptance or conduct in the other preclude the reception of parol testimony in contradiction of the terms of the instrument. That such is the understanding of the Court of Appeals in respect of contracts of the very character of the one involved in the instant case is evidenced by its language in the leading case of *Keuka College* v. *Ray*, 167 N. Y. 96, 101, where the court is solicitous to point out that the parol evidence introduced to show that there was consideration for defendant's subscription in the way of efforts by plaintiff to procure other subscriptions, etc., " was clearly not open to the objection that it tended to contradict, or to vary, the defendant's agreement," and was not " inconsistent with the instrument," plainly importing that in a situation identical with the one at bar, parol testimony to contradict or vary the instrument would be incompetent.

Respondents cite two cases to sustain their position on this branch of the controversy, namely, *Potter* v. *Kurlander*, 114 Misc. Rep. 117, and *Andersen Trading Co., Ltd.,* v. *Brody*, 193 App. Div. 681. In neither of these cases was the particular point now under consideration discussed nor any authority on the subject referred to. In both it is suggested that parol evidence of a modification of a written offer of purchase was admissible where there had been no written acceptance. The precise point now under discussion does not appear even to have been considered, both cases being explicable on the theory that the offer of the seller contemplated an acceptance in writing before it should become binding, and that consequently parol evidence was admissible in view of the fact that the only agreement actually made was an oral one. Moreover, in the *Andersen* case the original offer in writing was physically changed in part during the course of the negotiations and may very well have been regarded as not intended to become the memorial of the agreement of the parties.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.

GUY and DELEHANTY, JJ., concur.

Ordered accordingly.