HURON LODGE NO 444 B. P. O. E., Respondent, v. HINCKLEY, Appellant.

(210 N. W. 200.)

(File No. 5560.   Opinion filed October 7, 1926.)

**Subscriptions—Bills and Notes.**

>   Subscription for building fund of a specified total for a lodge hotel held not released by increase of such total to a much larger amount, where additional amount needed was covered by further subscriptions.

---

Note.—See, Headnote, A m e r i c a n   Key-Numbered   Digest, Subscription, Key-No. 17, 37 Cyc. 501 (Anno).

On validity and enforceability of subscription for charity, see note in 48 L. R. A. (N. S.) 783; 25 R. C. L. 1402; 4 R. C. L. Supp. 1630; 5 R. C. L. Supp. 1375.

Appeal from Beadle County Court; HON. D. D. BALDWIN, Judge.

Action by Huron Lodge No. 444 of the Benevolent and Protective Order of Elks against Lyman T. Hinckley. Judgment for plaintiff, and defendant appeals. Affirmed.

*Gardner & Churchill,* of Huron, for Appellant.

*Wilmarth, Haney, McCoy & McCoy, Nult & Royhl, Crawford &Crawford,* and *Chamberlain & Hall,* all of Huron, for Respondent.

DILLON, J.  This is an action brought upon a subscription or promissory note for the sum of $500, executed by defendant in favor of Lodge No. 444, Benevolent and Protective Order of Elks, at Huron, in writing as follows:

"$500.                    Huron, South Dakota, Sept. 3, 1919.

"Before Sept. 1, 1920, after date, without grace I promise to pay to Huron Lodge No. 444 of the Benevolent and Protective Order of Elks or order five hundred dollars at Huron, South Dakota.  Value received with interest at the rate of eight per cent. from date due until paid.  We, the indorsers, guarantors, assignors and sureties severally waive presentment for payment protest and notice of protest for non-payment of this note and all defense on the grounds of extension of time of its payment that may be given by its holder, or holders, to the maker or makers thereof, and guarantee its payment any time after maturity.

                                        "Lyman T. Hinckley.

"Due Sept. 1, 1920.
"P. O. address, Huron, S. D.

"It is understood that this note represents my subscription for gold certificate building bonds issued for the purpose of building and equipping an Elks' building at Huron, South Dakota, and that in case a sufficient amount is not subscribed to permit construction of said building this note is to be returned intact and without cost to the signer, otherwise to be fully payable.  It is further understood that this explanation does not constitute a part of the note."

Plaintiff solicited loans for the purpose of erecting a large hotel building in Huron.  In return for the funds loaned, notes of the Elk Lodge were given, due in ten years and bearing 6 per cent. interest.  These notes were to be secured by either a trust deed or mortgage on the building to be erected.  At the time the loans were solicited, the total investment was planned to be $350,000.  The plaintiff was to furnish $100,000, leaving $250,000

to be raised by subscription. Later the plans were changed, and it was estimated that the building would cost, in round numbers, $700,000 when completed. Additional subscriptions were solicited to cover the increase in the cost, and there were at the time of the trial $415,700 outstanding in building bonds.

It is the contention of the plaintiff that the increased cost of the building does not release defendant from his note; that defendant has estopped himself from denying that he consented to the change in the plan of the building in view of the fact that he is a member of respondent lodge, is a resident of Huron, and resides in an adjoining block to that occupied by the Elks' hotel building, and was thus aware that the project had been greatly increased; that defendant never made any objection to the change of plan whereby the cost was increased; and that he has not been prejudiced or injured by the increased cost of the building inasmuch as the subscription has likewise been increased.

The defendant contends that the note was executed without consideration; that the cost of the building was greatly increased without his consent; that the value of the building bonds is much less at present than those for which he subscribed; that the bonds have never been delivered to him; that the trial court erred in excluding evidence offered by him and in directing a verdict for the plaintiff.

It is true that at the time defendant gave his note for $500 that the representation was that the total amount to be invested in the building to be erected by the Elk Lodge would be $350,000, and that the amount has since been increased to practically $700,000. Nevertheless the subscription has also been increased, and as held in Y. M. C. A. v. Olds Co., 84 Wash. 630, 147 P. 406, L. R. A. 1917F, 1132: .

"A subscription to a building fund of a specified total for a charitable object is not released by the increase of such total to a much larger amount if the addition is covered by further subscriptions so that the enterprise will not fail."

Webster's International Dictionary gives "charitable" as a definition for benevolent, and it will thus be seen that practically every element of this case is decisive of the case at bar.

"A subscriber to a fund for a charitable object who permits work to progress in carrying on the enterprise for a length of time without objection cannot secure release from his subscription because the plans have been changed. * * * It is undoubtedly true that a diversion of the funds from one avowed purpose to another purpose would release a subscriber. * * * But here the funds were not diverted nor misappropriated. They were used to construct the buildings contemplated. * * * The fact that the scope and purpose of the beneficiary were enlarged and the subscription fund increased constituted no detriment to appellant, and, in the light of the circumstances, will not release it."

In Booker, Ex parte, 18 Ark. 338, which was handed down in 1857, it is held that:

"Where a subscriber to a public work permits it to be carried on, for a length of time, without objection, he will be regarded, in equity, as acquiescing in the acts done, and will not be relieved from the payment of his subscription on the ground that the plan has been changed and the work is of no benefit."

The defendant herein promised to pay the sum of $500 on condition that plaintiff erect a building, and this promise cannot be withdrawn after plaintiff has incurred expense on the faith of same.

"The mutuality of the promise is tested by the situation existing at the time it is sought to enforce the subscription, and not by that existing at the time of the signing of the instrument. When the party or institution for whose benefit a subscription is made acts thereon and incurs legal liabilities and expense on the faith thereof, the promise ripens into an enforceable contract." 25 R. C. L. 1401.

In his defense the defendant states that he has never received any consideration for the signing of the note. The record shows that plaintiff offered to produce and leave with the court the bond to be delivered to the defendant upon payment of his obligation. The general rule is that:

"Unless a contrary intention appears the property will pass as between the parties although the goods remain in the custody of the seller as bailee of the buyer, and notwithstanding the seller has a right to retain possession until the price is paid." 35 Cyc. 313.

Delivery of property is not a necessary element of passing of title of specific property sold. When the defendant executed the note sued upon he thereby acknowledged that he had received the value of the thing for which the note was given. It is sufficient that plaintiff brought the bond into court and tendered same to defendant. The defendant was not entitled to the custody of the bond until he had paid for it. Whether the claim sued upon is a note or a subscription is immaterial. It is a well-established fact that the note was given as a subscription to plaintiff by defendant to assist in the construction of a building, and on the faith of this and other instruments of like kind plaintiff has incurred expense and liability by complying with the conditions upon which the subscription was made. The contention of the defendant that the instrument sued upon is not a note, but is a subscription which is so indefinite and uncertain as not to be binding upon either party, is entirely without merit.

We think the court did err in rejecting, as evidence, the last four lines of the instrument sued upon. The palintiff had introduced all the instrument marked exhibit "A" with the exception of the last four lines, as evidence, and the defendant should have been given the opportunity to introduce the whole. When the court admitted a part of the instrument as evidence for the plaintiff, then its admissibility had been proven and there could be no objection to it when introduced by defendant. The exclusion of a part of a document might alter the meaning of the whole, and it is necessary that the whole be read in order that the intent of the document be clearly understood. We also think that evidence offered to show that defendant had had no experience in the building of hotels or large buildings and so was not capable of knowing from the size of the building that the cost had been increased should have been admitted, as it was competent testimony, and the court erred in excluding such testimony. The defendant sought to prove that the building committee of the plaintiff had authority from the lodge to make arrangements for and to finance the Elks' building in Huron; that the building committee from time to time reported back to the plaintiff corporation its proceedings at regular meetings of the plaintiff corporation; and that the action taken by the building committee was ratified and approved from time to time; that at the time of trial the investment, in round numbers, was

$590,000, of which $37,000 was in lot and the balance in building; that the investment in hotel furniture and fixtures was between $45,000 and $46,000; that the sixth floor was only partially finished and the seventh floor wholly unfinished, and the cost of finishing same would be $50,000; that the record of the mortgage by .the plaintiff corporation on its Elks' building and hotel in Huron shows same mortgaged to Camden Rayburn, treasurer of the plaintiff, and his successors in office, as security for the payment of $650,000 with interest at 6 per cent, payable semi-annually, due on or before May 1, 1920; that the mortgage is recorded October 4, 1920, and the marginal certificates of the register of deeds shows payment of mortgage registration tax on the amount of $400,000 only; that the total amount of outstanding building bonds of the plaintiff corporation was $415,700. All of these offers of proof were rejected by the court, and we think the court erred in the exclusion of this evidence. We think, however, that the court was entirely within its rights in directing a verdict in favor of the plaintiff. There are no grounds whatever upon which the subscription could be adjudged void and unenforceable; and the verdict of the lower court is sustained.

GATES, P. J., and POLLEY, SHERWOOD, and CAMPBELL, concur in the result.