HURON LODGE NO. 444 OF THE BENEVOLENT AND PROTECTIVE ORDER OF ELKS, Respondent,

v. HINCKLEY, Appellant.

(222 N. W. 661.)

(File No. 5560. Opinion filed December 31, 1928.)

For former opinion, see 50 S. D. 355, 210 N. W. 200.

*Gardner & Churchill,* of Huron, for Appellants.

*Wilmarth, Haney, McCoy & McCoy, Null & Royhl, Crawford & Crawford,* and *Chamberlin & Hall,* all of Huron, for Respondent.

BROWN, J. This case is before us on rehearing. The facts are stated in the original opinion. 50 S. D. 355, 210 N. W. 200. Defendant in his answer admits that plaintiff is not a business corporation or corporation for profit, but is a benevolent organization

incorporated under the laws of the state, and alleges as his sole defense that the note sued on was executed by him "without value or consideration, and that defendant has not at any time received any consideration whatever for the execution thereof."

By numerous questions and various avenues of approach defendant attempted to show that the note was given for a subscription for building bonds issued for the purpose of building and equipping an Elks building in Huron; that the party soliciting his subscription told him that a building to cost about $350,000, more or less, was proposed; that the lodge had $100,000, which would be put in, leaving about $250,000 to be raised by subscriptions, but instead the lodge constructed a building at an approximate cost of $700,000; that the $100,000 contributed by the lodge was two-sevenths of the cost as represented to him, leaving the building mortgaged for but five-sevenths of its value, but the same sum contributed toward the actual cost was but one-seventh thereof, leaving the building mortgaged for six-sevenths of its value, and thus making the bonds less valuable than contemplated under his subscription; that the sixth and seventh floors of the building had not been completely finished; that no bonds had ever been tendered to defendant; and that he had received no money, property, service, or thing of value of any kind for the executing of the note.

All such evidence was excluded as inadmissible under the pleadings, and because plaintiff, having stood by and witnessed the construction of the building from foundation to copestone, was estopped to defend on the ground that a more expensive building was constructed than was at first designed. The court may have erred in the exclusion of some of the evidence offered, but it is not necessary to enter upon a detailed discussion of this matter, as we do not think the admissible evidence offered constituted any defense.

The subscription contract printed below the note and on the same paper read:

"It is understood that this note represents my subscription for Gold Certificate Building Bonds issued for the purpose of building and equipping an Elks Building at Huron, South Dakota, and that in case a sufficient amount is not subscribed to permit construction of said building this note is to be returned intact and without cost to the signer, otherwise to be fully payable. It is

further understood that this explanation does not constitute a part of the note."

The only condition on which the note was not to be enforced was if "a sufficient amount is not subscribed to permit construction of said building." That a sufficient amount to permit the construction of the building *was* subscribed is conclusively shown by the conceded fact that the building *was* constructed. Had this subscription contract been admitted, instead of excluded, it would not have availed defendant anything. His offer to show that the party who procured his subscription said the building was to cost only $350,000, and that a $700,000 building was erected instead, was inadmissible, as adding to and varying the written subscription contract.

The general rule is that "parol testimony cannot be received to contradict, vary, add to, or subtract from the terms of a valid written instrument." 3 Jones, Blue Blook of Evidence, 145, § 434. "A contract of subscription to any enterprise or undertaking or for any other object cannot be varied or contradicted by parol or extrinsic evidence. Accordingly conditions claimed to be attached to the subscription, but not appearing in the paper signed, cannot be shown." 22 C. J. 1120, 1155, §§ 1485, 1486, 1547, and notes.

In South v. First National Bank, 205 Ala. 31, 88 So. 221, the court quotes 25 R. C. L. 1407, § 13, "when a subscription agreement is in writing, parol evidence is not admissible to contradict the writing or to add conditions thereto which are not expressed," and says:

"The rule which admits parol evidence to show the real consideration for a written contract does not allow the use of such evidence to ingraft new and different conditions upon the promise. The promise to pay if there was a completion of the road as a 'state highway' must be taken at its face value. * * * Parol specifications as to what kind of a state highway was in the mind and purpose of defendant when he signed the instrument cannot be shown."

Oral evidence that defendant subscribed for railroad stock on condition that there should be a station adjoining his land was held to be inadmissible to add to his written subscription, in Philadelphia, etc., R. Co. v. Conway, 177 Pa. 364, 35 A. 716. See, also, Hatcher-Powers Shoe Co. v. Bickford, 212 Ky. 163, 278 S. W. 615; Davis v. Shafer (C. C.) 50 F. 764; Guinzburg v. Blustein, 121 Misc. Rep. 784, 202 N. Y. S. 333.

■ That defendant received no money, service, or other thing of value for the note would not show it to be without consideration. The expenditure of money or incurring of obligations by plaintiff in the erection of the building on the faith of the subscriptions made is a sufficient consideration for a note given for the amount of a subscription. Furman University v. Waller, 124 S. C. 68, 117 S. E. 356, 33 A. L. R. 615; Eastern States A. & I. League v. Vail's Estate, 97 Vt. 495, 124 A. 568, 38 A. L. R. 845. In Y. M. C. A. v. Olds Co., 84 Wash. 630, 147 P. 406, L. R. A. 1917F, 1132, it was held that a subscription to a building fund was not released by an increase in cost of the building to nearly twice the amount originally designed.

Appellant argues that that was a case of donation, while he subscribed, not as a donation, but as an investment, and that makes a difference. But Eggleston v. Pantages, 93 Wash. 221, 160 P. 425, was a case of investment, and it was there held that, where a stock subscription provided that one would equip and turn over to the corporation a theater building, parol evidence was inadmissible to show that he represented that it would cost twice as much as he actually expended on it.

■ Subscriptions for public and quasi public enterprises are favored in law, and as a matter of public policy are construed, if they reasonably may be, to support a recovery. Doubtful questions are to be resolved against subscribers who seek to avoid promised contributions. Eastern States A. & I. League v. Vail's Estate, supra.

■ Defendant testified that he had lived in Huron continuously since March, 1883, and during all the time the Elks building was being constructed was a member of the lodge, and lived on the block adjoining the building; that, after the work on it had progressed to a considerable extent, he learned that it was going to cost considerably more than he claimed had been represented to him, and yet he took no steps to have his subscription canceled; it is not claimed that he informed the building committee or any one else that he deemed himself released from liability on his note for that or any other reason. He stood by without remonstrance or objection, while the building was carried to completion, and he should now be estopped to contend that he is not liable on his note. Y. M. C. A. v. Olds Co., supra; Ex parte Booker, 18 Ark. 338;

Lowe v. Keens, 90 Neb. 565, 133 N. W. 1127, Ann. Cas. 1913B, 430.

 Defendant contends that title to the bonds he subscribed for never passed to him, and therefore plaintiff cannot recover, in any event, more than the difference between $500 and the value of the bonds, and that, as no proof was given by plaintiff of the value of the bonds, no recovery can be had. At the commencement of the trial, and before any evidence was introduced, plaintiff's attorney offered to produce and leave with the court for defendant the bonds for which he had subscribed, to be delivered to him on the payment of the note, and such bonds were delievered to the clerk at the time of the trial, to be given to defendant on payment therefor. Defendant's attorney dictated into the record a refusal to accept the bonds for all of the reasons set forth in his opening statement as to the evidence he would offer on the defense, and for the further reason that the offer came too late.

The answer pleads want of consideration, but not failure of consideration, and does not set up failure to deliver or tender the bonds as a defense. It is quite apparent from the refusal dictated into the record that a tender of the bonds prior to the commencement of the action, if such tender had been made, would have been futile, and the offer to deposit the bonds in court for the benefit of defendant, to be delivered to him upon payment of his note, was sufficient to entitle plaintiff to recover the amount of the note.

From the whole record, we think plaintiff was entitled to judgment. Judgment and order appealed from are affirmed.

POLLEY and SHERWOOD, JJ., concur.

CAMPBELL, J. (dissenting). I am sorry that I cannot bring my judgment to accord with the majority of the court herein. The matter seems of sufficient scope and importance to require a brief statement of my views, wherein I am authorized to say that BURCH, P. J., concurs.

It seems to me the word "subscription" in this case has caused a vast deal of unnecessary confusion, and I am entirely unable to perceive how the cases cited in the majority opinion dealing with donations, or gifts, or other voluntary gratuitous contributions, commonly referred to as "subscriptions," have any application here whatever. Respondent might have undertaken to finance a building

by gifts or donations, but it did not. It undertook to finance its project, not by seeking gratuities, but by borrowing money subject to be repaid, adopting the common corporate machinery frequently used for making loans, to wit, the issue and sale of bonds. As I view the transaction, appellant was not asked to make, and did not agree to make, any donation or gift or "subscription" in that sense of the term. He agreed to buy bonds issued by respondent of the par value of $500 upon future delivery, and executed his promissory note representing the purchase price thereof.

I cannot avoid thinking that the majority opinion in this case grievously confuses "consideration" and "motive," notwithstanding the fact that, as a matter of law, they are frequently far from synonymous. As stated by Prof. Williston: "Though desire to obtain the consideration for a promise may be, and ordinarily is, the motive inducing the promisor to enter into a contract, yet this is not essential nor, on the other hand, can any motive serve in itself as consideration. Thus, A may be moved by friendship to agree to sell his horse to B for one hundred dollars. If there is an actual agreement to make the exchange of the horse for money, there will be a contract though A's motive for entering into the transaction was friendship." Williston on Contracts, § 111.

See, also, 1 Page on Contracts, § 526, and cases cited; Philpot v. Gruninger, 14 Wall. 570, 20 L. Ed. 743; Puterbaugh v. Puterbaugh, 131 Ind. 288, 30 N. E. 519, 15 L. R. A. 341.

It may be conceded that appellant might not have signed the note in suit—might not have agreed to buy the bonds—but for the fact that he was interested in the general project of erecting an Elks building, and believed it would be a good thing for respondent (of which appellant was a member) and for the community. That, it appears to me, is mere motivation inducing appellant to enter into the bargain he made—the bargain entered into was to buy bonds, and the motives that may have inspired the making of the bargain are legally immaterial, and should not affect the legal results of the actual transaction between the parties, which was that respondent proposed to sell bonds, and appellant agreed to buy bonds, of the par value of $500, and gave his note for the purchase price. Accompanying the note was an unsigned writing, stating that the note was given for bonds; that the proceeds of the bonds would be used to build and equip an Elks building at Huron; and that, if a suf-

ficient amount was not subscribed (that is, if a sufficient amount of bonds were not sold in advance) to permit the construction of the building, the note would be returned, otherwise to be fully payable. That clause, in my opinion, in legal effect merely specifies a contingency upon which the entire transaction of purchase and sale of bonds might be abandoned. Of course, it is hornbook law that "parol testimony cannot be received to contradict, vary, add to, or subtract from the terms of a valid written instrument," but I am not familiar with any cases where that principle of law has been held to prevent the maker of a promissory note from establishing the defense of failure of consideration., and it is equally elementary that parol evidence is admissible to explain and supplement a palpably ambiguous or incomplete writing.

It is my opinion that the consideration for the note in this case was not the erection of a building, as might be true of a note representing a gift or donation, but was nothing more nor less than the bonds to be thereafter delivered. If there was an agreement between the parties at the time of the execution of the note as to the kind of bond to be delivered, I think appellant is entitled to show that agreement, and I do not think he should be compelled to pay the note, unless and until he is tendered substantially the kind and type of a bond that he agreed to take and for which (and for nothing else) he gave the note. Appellant claims that it was agreed, at the time of the execution of the note, that the bonds which he would receive in return for it would be a $500 part of the issue of $250,000 secured upon a building costing $350,000, paid for in cash to the extent of $100,000. The bonds tendered to him (if there has been any tender at all, which seems doubtful) are a $500 part of an issue authorized to the extent of $650,000 secured upon a building costing a little over $600,000, paid for in cash to the extent of approximately $90,000. That these are utterly different things is too plain for argument. Appellant having given his note for bonds, I cannot avoid believing that he is entitled to show the agreement as to the kind of bonds he was to receive in consideration for the note, and that he ought not to be compelled to pay the note until delivery or tender of the kind of bonds he was promised. I see nothing in the note or the printed matter below the note form to prevent this, and I am therefore of the opinion that the judgment appealed from should be reversed.

BURCH, P. J., concurs in the foregoing dissent.